## QUINN, ET AL. v WISWALL.

1. In this State a judgment binds lands only from the time of its rendition, and has no relation to the first day of the term.
2. A writ of *venditioni exponas*, which contains no *fieri facias* clause, does not invest the sheriff with authority to sell other property than is named, or to create or to continue a lien.
3. The sale under a junior judgment which is not a lien upon the lands sold, cannot be sustained by referring the sale to the authority given by an older execution, and judgment, when the older execution was not in the sheriff's hands at the time of the sale.

Writ of error to the Circuit Court of Mobile.

EJECTMENT to recover certain lands in the city of Mobile. Quinn was the tenant in possession, but James McWhinnie was admitted to defend as landlord.

The title made by Wiswall, the plaintiff, is this : In the year 1830, and for several years afterwards, one John Wiley was in possession of the premises sued for. On the 10th June, 1839, one Hunt recovered judgment in the County Court of Mobile, against Wiley, for $937. A writ of *fi. fa.* issued on this judgment, on the 8th July afterwards, which, on the 31st January, was levied on a lot of land different from that in controversy. That was returned as unsold for want of time, and it was advertised to be sold on the first Monday in March, 1840. On the 8th February, a writ, in form a *venditioni exponas* issued, directing the sheriff to sell the land he had previously returned as unsold for want of time. This writ was returned, that all proceedings on it had been stayed by order of Hunt's agent. Another writ of the same nature issued on the 10th July, 1840, which was returned in these terms, " after duly advertising the within described property, I sold the same, on the first Monday in November, 1840, to Thomas McWhinney, for the sum of ten dollars. And I also sold, on the same day, the following described lands, which were sold by virtue of other executions in my hands against the same defendant, but the proceeds of the sale were applied to this judgment, it being the oldest judgment against the defendant." After this is a description of several lots of land, and in particular that which is the subject of this suit. On the 18th February, 1840, one Gurden recovered judgment in the County Court of Mobile, against Wiley, for $1,258. On this, execution issued on the 18th April afterwards, which was returned " no property found." An alias issued on the 25th June, of the same year. This was levied on the land in controversy, as also upon other lands, and it was sold by the sheriff, on the first Monday of November, 1840, to the plaintiff Wiswall, to whom the sheriff executed a deed, bearing date 2d November, 1840. The return of this alias execution specifies that the proceeds of the sale was applied to the judgment obtained by Hunt.

The defendant made title by producing a deed for the land in controversey, from one Innerrarity to Wiley, and one John Hall, dated 10th February, 1831. Also a deed from Wiley,

dated 8th February, 1840, conveying the land to the defendant, McWhinnie.

On this state of proof, the Court charged the jury that the sale made by the sheriff, by virtue of the execution before named, had relation to the day of the date of the judgment in favor of Hunt; and that the sheriff's deed conveyed the lands in controversy to the plaintiff, as of the day of the date of that judgment; and therefore the plaintiff was entitled to recover.

The defendant also claimed that Hall's portion of the land had been devised by a will, made by Hall, who was the joint owner under the deed from Innerrarity, and to shew this, produced the will of Hall, admitted to probate by the judge of the County Court of Mobile, on the 16th September, 1833, but there were no subscribing witnesses to it; and for this reason the Court excluded it from the jury. The defendants having excepted to this exclusion, as well as the charge of the Court, now assigns that the Court erred in these particulars.

GIBBONS, for the plaintiff in error, insisted, that whatever lien might be awarded to Hunt's judgment, it could not be enforced, unless there was an execution in the hands of the sheriff, for otherwise, if he sold, he would be acting without authority. It is evident, that unless Wiswall's title can be referred to, and supported by, Hunt's judgment, he cannot succeed, because McWhinnie's title was derived from Wiley, on the 8th February, 1840, and Gurden's judgment, under which the land was sold, was not obtained until the 18th of the same month.

Hall's will was necessary to show a title derived from him for one half of the land, in the event of failing under Wiley's title. The question of will or no will, was one for the probate Court, and could not be revised collaterally.

STEWART, contra, urged the following points to sustain the judgment of the Court below:

1. Considering the sale as made under Gurden's execution, the title of Wiswall is good. The term commenced on the 8th February, 1840, the same day that Wiley executed his deed to McWhinnie. Although the judgment was obtained on the 18th of that month, it related back to the commencement of the term, as between the creditor and the assignee of the debtor. [8 Leigh, 272.]

2. The sale to Wiswall may be sustained by a constructive levy, applicable to Hunt's *vend. expo.* as that was in the sheriff's hands when the levy and sale was made, under the junior judgment. An actual levy is not necessary to be made on each execution, when there are more than one, to support a sale. The same effect ought to be given to a *vend. expo.* when it fails to produce the sum necessary to satisfy the judgment, because the creditor has evinced his determination to have his due, as fully as if a *fi. fa.* had been sued out. No injustice could ever be wrought by giving such an effect to the first named writ, because in point of fact, that is as much the continuance of the execution as if there was a general *fi. fa.* That a constructive levy is sufficient and a sale under it will be supported, see 5 Cowen, 390; 17 John. 121; 1 Hill, N. Y. 559; 13 John. 97; 2 Dunlap's P. 797, 800; 3 Ala. Rep. 111; 7 Wend. 83; 2 West. C. C. 280; 7 Taunt. 56; 1 Term. 729.

3. The defendants do not set out the sheriff's deed to Wiswall, but in point of fact it purports to convey all the title which Wiley had to the land, at the date of Hunt's judgment. Now this deed passes the title, if the sheriff had power to pass it. And it is immaterial what irregularities occur in the execution, the sheriff's acts under it, or in the deed. All that is necessary is—1. A judgment. 2. A command to execute it; and 3. A sale of land for its payment. [8 John. 361; 3 Munf. 263; 3 Howard, 66; 3 Munf. 546; 2 Dunlap's Pr. 814, 816; 13 John. 97; Watson on Shffs. 136; 5 Ala. Rep. 58.]

4. The sale may also be supported under the original execution, as the levy made under it was not sufficient to satisfy the judgment. The question here, is not between two judgment creditors, but between a purchaser whose right is good, if it can be referred to any sufficient levy. Where lands are concerned, the levy is very unimportant, as the fact of lien is referred to the judgment, and is neither delayed by a levy on personal chattels afterwards restored to the debtor, nor by a levy on other lands. [4 Ohio, 378.] A sale made after the return day of the execution, is not for that cause void. [4 Wheat, 504; 13 John. 97; 2 Dunlap, Pr. 800; Watson on Shffs. 136, 189; 3 Scammon, 557.]

5. If the money was in the sheriff's hands, neither Gurden the junior creditor, nor Wiley could successfully resist a mo

tion for him to apply it as he has done; and if Hunt can retain the money, it seems certain that the sale will be supported. If the sheriff had a *ca. sa.* instead of a *fi. fa.* or *vend. ex.* the same result would follow.    [9 Porter, 201.]

GOLDTHWAITE, J.—1. It is generally assumed by the commentators that it was a settled rule of the common law that judgments in either of the superior Courts, had relation to the first day of the term, and that a consequence of this relation, was the overreaching of even *bona fide* alienations of lands made by the debtor before the rendition of the judgment, but after the commencement of the term.    [3 Black. Com. 324; 2 Saund. 8 K.; Farm v. Atkinson, Willis, 427; Bragner v. Longwood, 7 Term. 20; 2 Bacon Ab. Ex. J.; Johnson v. Smith, 2 Burr. 950.]    In 3 Salk. 212, it is said, that Lord Holt recognized the general rule, but an exception was, when the record showed the contrary, as where there was a memorandum on the roll, or a continuance of the cause until a future day of the term. Lord Mansfield, in Portchester v. Petrie, of which a note is given 2 Wm's. Saund. 148 b., says, that Hays v. Wright, Yelv. 35, and Miller v. Bradley, 8 Mod. are to the same effect.    We think it very possible, that if the statute of 29 Chas. 2. had never been passed, it would long since have been discovered, that the earlier *dicta* of the English judges on this matter, (for we have been able to find, no case, where a *bona fide* alienation was held inoperative against a subsequent judgment,) were contrary to the general spirit of the common law, and especially to that maxim, which declares that a legal fiction shall work injury to no one.    It is true, the particular sections of the statute of frauds, intended to extirpate the mischiefs, which grew out of holding a judgment to have relation to the first day of the term, have never, in terms, been re-enacted in this State; but there are enactments which produce the same effect. Thus the records of the respective Courts within this State, for each preceding day of every session, shall be read in open Court, on the morning of the succeeding day.    [Clay's Dig. 296, § 38.]    And all judgments shall bear interest from their date.    [Ib. 284, § 5.]    But what is entirely conclusive of the subject, is, that the act which gives the writ of *elegit*, directs the sheriff to cause to be delivered to the plaintiff, a moiety of

the lands, &c. whereof the defendant *at the day of obtaining the judgment*, or at any time afterwards was seized.   [Ib. 200, § 1.]   The decision in Morris v. Ellis, 3 Ala. Rep. 560, shows that the subsequent act giving a *fi. fa.* upon judgments, is to be construed in connection with that which previously gave the *elegit*, and binds in the same manner.

We deem it useless, therefore, to consider the case of Coutts v. Walker, 2 Leigh, 268, and the other Virginia cases, in which a different conclusion is arrived at.   This reasoning necessarily disposes of that branch of the plaintiff's argument, which insists that the sale was good under Gurden's execution, by making the judgment relate to the first day of the term. [Pope v. Brandon, et al. 2 Stew. Rep. 401.]

2. The *venditioni exponas* issued at the suit of Hunt, although in the hands of the sheriff, at the time he made the sale under the writs of *fi. fa.* at the suit of other creditors, contained no claim authorizing the sheriff to levy anew if the property described did not produce sufficient to satisfy the judgment, and therefore did not operate to transfer to it the levy subsequently made under junior judgments.   The like proceedings which the statute directs to be had on such a writ, refer to what might, and ought to have been had in relation to the effects levied upon, and not to property generally.   [Clay's Dig. 203, § 9.] Ordinarily, the writ of *venditioni exponas* is a mere command to the sheriff to perform a part of his duty which has been omitted, but it may also be a *fi. fa.* for the residue of the debt, when the goods taken are not sufficient to satisfy the whole. [2 Saund, 47, r.]   In the present case the writ merely commands the sheriff to expose lands to sale, which he had previously levied on, and a purchaser searching the office would not receive any information from it, that it was an authority to sell any other property than that mentioned in it.   It would in our opinion, be carrying the doctrine of liens much too far to transfer one from a junior judgment, to an older one, when the only connection is the existence of a *vend. ex.*   The reason why a sheriff's sale is held good, although actually made under an execution having no lien, when in fact he has the authority to sell under another, is, the purchaser is only required to ascertain the right of the sheriff to make the sale under some valid process.   So far as the purchaser is concerned, the sale

resolves itself into a question of authority to sell, or the want of it. This authority is derived from a judgment, the command to execute it, and its actual execution. [Bradford v. Ware, 2 Ala. Rep. 676, and cases there cited; to which may be added those cited by the plaintiff.]

3. All the other points pressed by the plaintiff may be briefly answered, with the observation, that the defect of his title, as exhibited, is, that the sheriff was invested with no authority reaching the land sold by him. The execution first issued on Hunt's judgment, had ceased to confer any authority, because no levy was made under it, so as to affect the land in question, and that might as well have been sold under any other dormant judgment. There is nothing in the case of Campbell v. Spence, 4 Ala. Rep. 543, or Webb v. Bumpass, 9 Porter, 201, which is not in accordance with the views now expressed, as both of them recognize the general principle, that a purchaser will not be required to investigate the conflicting liens of different plaintiffs, and the former was an adjudication upon, not as supposed, the liens of different judgments, but of judgments sought to be enforced by existing executions. It is not for us now to settle, either the rights of Gurden against Hunt, or against the sheriff, or to show that Hunt, if forced to refund the purchase money, either to Wiswall or to Gurden, may yet enforce his lien against the land now in controversy. All these questions are foreign to this case, though, doubtless, properly enough adverted to, as showing what consequences must grow out of our decision.

Our conclusion is, that the Circuit Court erred in instructing the jury, that the sale by the sheriff had relation to the date of Hunt's judgment, and that his deed conveyed the land in controversy as of that date. As this point will probably be decisive of the cause, but the more especially as no foundation is laid for raising the question in relation to the proof of the will, we decline to decide it.

Let the judgment be reversed and remanded.