## COOPER *v.* SUNDERLAND.

Section 1508 of the Code, which provides that no person can question the va-
lidity of a guardian's sale of real property, after the lapse of five years from
the time it was made, is not to be regarded in the nature of a general stat-
ute of limitations, so as to apply to sales which had taken place prior to the
passage of that statute; but its application should be limited to cases arising
under chapter eighty-eight of the Code alone.

In regard to courts superior, and of general jurisdiction, every presumption is
made in favor, not only of their proceedings, but of their jurisdiction.

This presumption is not exercised, however, in relation to the jurisdiction of a
court inferior, and of limited jurisdiction, but it must be shown.

When the jurisdiction of an inferior and limited court is shown, then the same
presumption prevails in favor of its proceedings, that does in favor of those
of a superior court.

When the existence of jurisdiction of an inferior court, is once shown or admit-
ted, the judgments of superior and inferior tribunals stand on the same foot-
ing, and are equally and absolutely conclusive, when not appealed from, or
when attacked collaterally.

A superior court is presumed to act rightly, and within its jurisdiction; but an
inferior court should set out the requisite facts on the face of its proceed-
ings.

When the jurisdictional facts are stated on the face of the proceedings of an
inferior court, they are taken as *prima facie* proof, or are presumed to be as
stated.

But these facts, thus shown by the record of inferior courts, may, perhaps, be
contradicted by the papers in the cause, and in some instances, by evidence
*aliunde.*

So, also, the facts may oftentimes, if not generally, be proved by evidence
*aliunde.*

Whether, when a superior court acts without the scope of its general and com-
mon law authority, and by virtue of a special and statutory power, it is ne-
cessary to show on the face of its proceedings, that the power has been
strictly pursued, in all essential particulars, both as regards the subject mat-
ter of the cause and the parties, *quere?*

When power is given to a court over a special subject, which is not in the
usual course of the common law, and a mode is prescribed for the exercise
of the power, such mode must be pursued, whether the tribunal be a supe-
rior or an inferior one, and sufficient must appear on the face of the proceed-
ings, to show the case to be within the reach or jurisdiction of the tribunal.

Whether, in the case of a superior court, this sufficiently appears by the stat-
ute conferring the power, and the common law presumptions in favor of such
a court, a petition being filed to call up the power, *quere?*

If, however, sufficient appears on the face of the record of the court, to give it

Cooper v. Sunderland.

jurisdiction, under the law conferring the power, then the presumption attaches in favor of the remainder of the proceedings of the court, whatever that court may be.

But whether, and in what cases, the facts stated in the record may be contradicted, *quere?*

If there be a petition in relation to the proper subject matter, to call into action the power or jurisdiction of the court, the sufficiency of the petition cannot be called in question collaterally.

If there is a notice, or publication, or whatever else of this nature the law requires, in reference to persons, its sufficiency cannot be questioned collaterally.

Where, in an action of right, it appeared from the records of the proceedings of the District Court, in a proceeding by the guardian to sell the real estate of minors, under chapter eleven of the act in relation to wills, administrators, &c., approved February 13th, 1843, that the court was " satisfied from publication, properly filed, that the notice required by law had been given ;" *Held,* 1. That whether section eight of chapter eleven of the act, intends that notice should be given to the wards, *quere ?*  2. That chapter eleven did not require personal service on the parties entitled to notice.  3. That the finding of the court as to the service of the notice, was sufficient to confer jurisdiction, at least, until contradicted by proof.  4. That the sufficiency of the notice was a question for the appellate court on appeal, and could not be examined into collaterally.

The provisions of section twenty of chapter eleven of the act relating to wills, administrators, &c., approved January 13th, 1843, are peremptory, and not directory only.

Where, in an action of right, the defendant, to prove title in himself, offered in evidence the record of the proceedings of the District Court, in a proceeding by the guardian of the plaintiff and other minors, to sell the real estate in controversy, under the act of January 13th, 1843 ; and where it did not appear from the record, or the papers in the proceeding, nor by evidence *aliunde,* that the guardian had taken the oath required by section eleven of chapter eleven of the act ; *Held,* That because it did not appear that the guardian had taken the oath prescribed by the statute, that the sale was void.

Under section twenty of chapter eleven of the act of 1843, it must appear, either by averment in the record, or otherwise, that the guardian took the oath required by the statute, before fixing on the time and place of sale of the property of the ward.

Where from the record of the proceedings of the District Court, in a proceeding by a guardian, under the act of 1843, to sell the real estate of the wards, it appeared that the court directed a notice of the sale to be given ; that the report of the sale recited that the guardian had advertised the sale according to law ; and that the report was followed by a confirmation of the sale by the court ; and where there was no notice of the sale returned among the papers, nor any other evidence of its having been given ; *Held,* That the evidence of notice of the sale was sufficient, *prima facie.*

The fifth proviso in the twentieth section of chapter eleven of the act of 1843, in relation to wills, administrators, &c., does not refer to the original purchaser solely, but to the person who holds the premises at the time of the commencement of the action.

*Appeal from the Des Moines District Court.*

THIS is an action of right, commenced by the plaintiff, on the 12th day of October, A. D. 1853, to recover the possession of lot No. 64 (A) in the city of Burlington, of which he claims to be the owner in fee simple. The plaintiff claims title as one of the heirs at law of Thomas Cooper, deceased, who was seized of the premises in fee simple at the time of his death. Thomas Cooper was the father of the plaintiff. The defendants, in their answer, deny the claim of the plaintiff to the premises, and allege title in themselves, by virtue of the following conveyances: 1. By deed from David Wigington and Ann Wigington, his wife, to William and Samuel McCutcheon and John P. and William Sunderland, executed October 3, 1848; 2. By deed from William and Samuel McCutcheon to John P. and Wm. Sunderland, executed February 21, 1850; and 3. By deed from Ann Wigington, formerly Ann Cooper, as guardian of the heirs of Thomas Cooper, deceased, to David Wigington, executed May 1, 1848, under and by virtue of an order and decree of the District Court of Des Moines county. The defendants also pleaded that the plaintiff ought not to maintain his action, because more than five years had elapsed since the execution of the deed from Ann to David Wigington. The plaintiff replied, denying the new matter set up in the answer. The cause was tried by the court, without the intervention of a jury. The plaintiff offered evidence tending to prove title in himself, which need not be set out at length; that defendants had been in possession four or five years; and the premises were worth from $25 to $30, per annum. The defendants, to sustain the issues on their part, offered in evidence the deeds referred to in their answer, and the record of the proceedings in the District Court, under which the land was sold to David by Ann Wigington, as guardian

Cooper v. Sunderland.

of the minor heirs of Thomas Cooper, embracing the petition of the guardian for an order to sell the premises; notice of the application for the order, with an affidavit, showing its publication in the Iowa State Gazette, for three successive weeks; a statement of an account with the probate judge, showing the sum of $350, to be due the guardian; an order of the court for the sale of the premises, upon giving the specified notice; a report of the sale to the court, reciting that the sale of the premises had been advertised as required by law, and an order of the court, confirming the sale. The defendants also proved, by J. P. Weightman, who was judge of probate for Des Moines county, at the time the order of sale by the District Court was made, that the plaintiff called on the witness, and was anxious, and officiated in procuring the order to be made, and that the plaintiff was the principal person in attending to, and procuring the order of sale from the District Court. On the trial, it was admitted that the plaintiff was under fourteen years of age, when Ann Wigington was first appointed guardian; that he was over fourteen, and under twenty-one, when the sale was made; and that D. Wigington, who was the purchaser at the sale, during all the time the proceedings were pending, and at the time of the sale, was the husband of Ann Wigington. This being all the evidence, the court found that the plaintiff had title, and was entitled to recover the possession of the land in question, and judgment was entered accordingly. The defendants appeal, and assign for error the rendition of this judgment.

*David Rorer* and *Browning & Tracey*, for the appellants.

1. We contend that it is too late for the plaintiff to assert his title, if he has any, more than five years having intervened between the probate sale and deed, and the time of commencing this suit. The sale was on the 1st day of May, and the deed was made on the 3d day of May, 1848, and suit was commenced, on the 13th, or at most, upon the 12th day of October, 1853, leaving more than five intervening years. " No action for the recovery of any real estate, sold

by an executor or administrator, &c. shall be maintained by an heir or other person, unless it be commenced within five years," &c. Laws of 1843, § 35. Now it clearly appears by the proceedings in the District Court, in which the decree of sale was obtained, that the claim of plaintiff here, such as it is, is as one of the *heirs* of Thomas Cooper, deceased.

2. We contend, that after decree, sale, and *confirmation* by the District Court, the title of defendants under such decree, sale, and confirmation, cannot be resisted or impeached collaterally, and in an action like the present; for it fully appears, from the bill of exceptions : 1. That the person obtaining the decree, was the guardian, and was licensed to make the sale by a court of competent jurisdiction ; 2. That the guardian gave bond, which was approved as required by law ; 3. That the proper oath was taken; 4. That proper notice was given ; 5. That the premises were accordingly sold by public auction, and are held by those who purchased in good faith.    See Laws of 1843, § 36.    And the said sale, having been confirmed by decree of the District Court, such confirmation renders the matter *res judicata*, as to the provisions of the above cited section, not only so, by the general law, but more especially when taken in reference to. section 37 of the laws of 1843, which clearly contemplates a remedy against the guardian, for any wrong, neglect, or. other injury, in regard to such sale. In the case of *Barney by her next friend* v. *David Saunders et al.*, 16 Howard, 535, the court say : " The acts of Saunders as administrator, &c., are not the subject of review in this suit.    He settled his account as administrator in the orphan's court, and the allowance made there, *cannot be reviewed collaterally* in another court."    *Gates* v. *Loftus*, 4 Monroe, 444; *Irby* v. *McCrea*, 4 Dessaussure, 422; *Simpson* v. *Hart*, 1 John. Ch. 91; *Price* v. *Nesbit*, 1 Hill, 461; *Thompson* v. *Tolmie et al.*, 2 Pet. 157; *Akins & Swift* v. *Kinnon*, 20 Wend. 241; *Grignons' Lessee* v. *Astor et al.*, 2 How. 319; *Ex parte Watkins*, 3 Pet. 206; *United States* v. *Arredondo and others*, 6 Pet. 729; *Jackson ex dem. Jenkins* v. *Robinson*, 4 Wend. 436; *Wright* v. *Marsh, Lee*

& *Delevan*, 2 G. Green. 94; Sugd. on Vend. 184; Fonb. Eq. 91, note; Story on Agency, 8; 3 Johns. Ch. 543; 3 Peters, 284; 3 Pick. 280; 1 Dallas, 186; 2 Doug. 433.

*J. C. Hall*, for the appellee.

It is insisted on the part of the appellee, that the court had no jurisdiction over the subject matter or the persons, when the order of sale was made; that the sale was void, because made to the husband of the guardian; and that Ann Wigington was not guardian. Chapter 10 of the act of 1843, which is made the rule, for guardian sales, contemplates and requires, that a petition of a guardian, shall make all persons interested, parties, and that the proceedings shall be adversary. Section 8 requires that a notice of the petition, and of the time and place of hearing, shall be given to all persons interested, that they may appear and show cause, &c., which notice must be served on "them personally, fourteen days, at least," before the time appointed for hearing the petition, or published three weeks successively in such newspaper as the court shall order. This section certainly means and contemplates, that all persons who may be interested, shall be named in the petition; it uses the words "all persons" and "them." A general notice to all persons, cannot be served personally; nor is it a notice to a party in these proceedings. In the case at bar, the notice published is for one purpose; the petition filed, is for another purpose. It was an absolute condition to the exercise of jurisdiction, that these notices should have been served, and specifically contain all legal requisites. See *Milbourn* v. *Faut,* and *Spratt* v. *Marshall,* December term of this court, 1854; *Heirs of Otis Reynolds* v. *May,* June term, 1854; *Pinkney* v. *Pinkney,* June term, 1854; *Hodges* v. *Britt; Clark* v. *Graham,* 6 Wheat. 577.; 5 Cond. 192; 4 Phil. Ev. Cow. & Hill's Notes, 1000; 1 Black. 35; 3 Black. 230; 12 Ohio, 272; *Greenvault* v. *Farmers and Mechanics' Bank,* 2 Doug. (Michigan) 498; and cases there cited.

As to the power of Mrs. Cooper to act as guardian after

Edwin became 14 years of age, see 11 Ohio, 442; *Erb* v. *Strong*, 2 Ib. 402; *Palmer* v. *Oakley*, 2 Doug. (Michigan) 434, and cases there cited; 4 Bacon's Abridgment, 584.

The sale to her husband was void, and no sale. *Bohart et al.* *v. Atkinson*, 14 Ohio, 230, and cases there cited; *Campbell* v. *Walker*, 5 Vesey, 678; *Ex parte Hughes*, 6 Vesey, 617; *Durae* v. *Fanning*, 2 Johnson, 552; 10 Ohio, 120; *Armstrong* v. *Huston*, 8 Ohio, 554; 2 Johnson, 268; *Smith* v. *Rice*, 11 Mass. 567.

When jurisdiction depends upon the character or occupation of the party, evidence is admissible to show that the party was not such a character. *Wise* v. *Withers*, 3 Cranch, 33; *Mills* v. *Martin*, 19 Johnson, 7; 1 Willis, 152; 2 Ib. 382. The subsequent proceedings are, in no respect, in conformity with law, and by the fairest implication of section 36 of the act, are void. The judgment of confirmation, was without any authority. No law in force authorized such an act of the court, and it was extra-judicial.

WOODWARD, J.—There are two acts of the legislature which have relation to the case. The first, is that of January 25th, 1839 (Rev. Stat. of 1842, 1843, chap. 99, 430), entitled an act concerning minors, orphans, and guardians. The second, is that of February 13, 1843 (Rev. Stat. 1843, chap. 162, 666), entitled an act relative to the probate of wills, executors, administrators, guardians, trustees of minors, and probate courts, and for defining their duties. For the sake of brevity, we will refer to these, as the first and the second act.

There is a difficulty presented in the second of the above acts, which calls for some preliminary attention. Chapter ten of this act, is entitled " of the sale of lands, for the payment of debts, by executors, administrators, and guardians;" whilst chapter eleven, relates entirely to sales by guardians. The provisions of the two relative to guardian's sales, are in some respects, dissimilar. The question is, which chapter is to govern in this cause. As the act has been repealed, we need not enter into a discussion of the matter, but will

only remark, that there is much which would lead to the idea, that the provisions of chapter eleven, relate principally to guardians of insane persons, spendthrifts, &c.   This view would be countenanced by the fact, that the title of chapter ten, refers to sales to pay debts, and a minor can have no debts, but for maintenance, and that for this, chapter eleven expressly provides; besides chapter eleven, and the first act above referred to, cover the whole subject of minors and their guardians; and if chapter ten, be considered as relating to minors' debts, and the charges in the case at bar be regarded as debts, in distinction from maintenance, still section 24 of chapter 10, perhaps, removes the difficulty, by providing that in such cases, sales may be made as directed in this (10th) chapter, "excepting in the particulars in which a different provision is hereinafter made," which refers to the next chapter undoubtedly.   We shall, therefore, make chapter eleven our guide, and its provisions are in general like those of the preceding chapter.

The first question which arises is, upon the limitation of such actions.   The second act, chapter 11, section 19, provides that no action for the recovery of any estate sold by a guardian, under the provisions of this chapter, shall be maintained by the ward, or by any person claiming under him, unless it be commenced within five years next after the termination of the guardianship."   Then follows an exception in favor of minors and others, under legal disability, to whom five years are allowed, after the removal of the disability.   There is nothing in the case showing that the action was not brought within five years next after the termination of the guardianship; and still more, it does not appear, but that it was brought, in due time after the removal of the disability of minority.   On the contrary, the presumption from the facts shown, is, that the action is free from the objection that it was not brought in due time. That it was not commenced within five years after the sale, is not a valid objection under the former acts, without adverting to the fact of their repeal.   But it is said that the plaintiff's right of action is barred by the Code, § 1508,

which is, that " no person can question the validity of such sale, after the lapse of five years, from the time it was made." The sale was made on the first May, 1848, and the action was commenced the 13th of October, 1853, more than five years after the sale. The repeal of the act of February, 1843, by the Code, took effect on July 1st, 1851. The question then, is, whether section 1508, of the Code, bars the plaintiff's right to bring this action, to question the validity of the sale. The point is presented, but not argued. We are not disposed to regard this section of the Code as in the nature of a general statute of limitation, so as to apply it to sales which had taken place prior to the passage of that statute, but should limit its application to causes arising under chapter eighty-eight of the Code alone. But if it were to be regarded as an ordinary statute of limitation, then those principles would apply, which are settled in the cases of *Morris* v. *Slaughter*, 1 G. Greene, 338 ; *Forsyth* v. *Ripley*, 2 Ib. 181 ; *Hinch* v. *Weatherford*, 2 Ib. 244 ; *Gordon* v. *Mounts*, 2 Ib. 243.

Objection is made to the sale of the lot in this case, upon three grounds: First, because the court decreeing the sale, had jurisdiction of neither the subject matter, nor the person ; second, because the minor was over fourteen years of age, when the petition for leave to sell, was filed ; third, because the sale was made to the husband of the guardian. The want of jurisdiction of the person, arises, if at all, from a want of notice to the minors ; and the questions involved in this objection, are difficult of solution. The American editors of Smith's Leading Cases (5th ed.), Vol. I, p. 844, very truly remark, that the inquiry, when, and under what circumstances, the proceedings of inferior courts, are to be regarded as void for want of notice, is unquestionably involved in much obscurity and confusion. But they add, that this difficulty may, in some degree, be obviated, or remedied by remembering that the question, when notice shall be presumed, is a very different one from that of the effect of a want of notice, when proved or conceded. We have strongly experienced this obscurity and confusion in examining a

mass of cases, to ascertain an intelligible rule by which to determine this cause. They seem, generally, to be decided, each upon its own facts, without much reference to rules; or when such are sometimes given, the mind feels its darkness nearly as much in understanding and applying them, as in groping its way without them. See 10 Peters, 474. In this, and in similar cases, the questions arise, what is a superior, and what an inferior court? when presumptions attach in its favor? what is jurisdiction, and when does it attach? whether notice, or other matter which must appear, may appear by the record of the judgment, or must be shown otherwise? whether a superior court, acting in a matter, not of common law jurisdiction, but committed to it by statute, is to be regarded as a court of inferior and limited jurisdiction? or whether those presumptions attach to it, which pertain to a superior court, and when a court may decide on its own jurisdiction, or how far the decision is conclusive?

On these questions, it requires a treatise, rather than an opinion in a cause, to reduce the cases to consistency and a system; and an illustration of what even a laborious treatise can do with the subject, is to be found by comparing the first and last sentences of a paragraph in 1 Smith's Lead. Cases, pp. 832, 833. The first is, that "whatever may be the rule with regard to courts of general powers, when acting within the scope of those powers, it is well settled that when they do not, and exercise a special and statutory authority, their proceedings stand on the same footing with those of courts of limited and inferior jurisdiction, and will be invalid, unless the authority on which they are founded, has been strictly pursued;" citing *Denning* v. *Corwin*, 11 Wend. 647; *Jackson* v. *Esty*, 7 Ib. 148; *Sharp* v. *Speir*, 4 Hill, 16; *Striker* v. *Kelly*, 7 Ib. 11; *Matter of Mount Morris Square*, 2 Ib. 14; *Williamson* v. *Berry*, 8 How. 495; *Same* v. *Ball*, 8 Ib. 566; *Matter of Flatbush Avenue*, 1 Barb. 289; *Muskett* v. *Drummond*, 10 B. & C. 153; *Christie* v. *Unwin*, 11 A. & E. 373; *Brancker* v. *Molyneux*, 4 M. & G. 226; *Rosswell's Lessees* v. *Otis*, 9 How. 336; *Thacher* v. *Powell*,

6 Wheat. 119; *Mayhew* v. *Davis*, 4 McLean, 213; *Embury* v. *Connor*, 3 Comst. 511. The last two sentences of this paragraph are as follows: "The inconveniences which may occasionally result from this course of decision, are more than compensated by the lesson which it teaches, that from whatever source power may come, it will fail of effect, when unaccompanied by right. It should, notwithstanding, be remembered, that the severity of this doctrine is tempered in practice by the maxim *omnia rite acta*, which is emphatically applicable to judicial proceedings, and that every intendment will be made in favor of the validity of the acts of a court within the scope of its powers, whether those powers are limited or general," citing *Voorhees* v. *Bank of United States*, 10 Peters, 449; *Dykman* v. *The Mayor*, &c., 1 Seld. 494.

Now, it seems to the mind of the writer of this opinion, that this second proposition overturns the first, for the first proposition is this, in effect, that, if a court is not acting within the scope of *general* (that is, *common law*) powers, that is, when it is acting under limited or special powers, they are to be strictly pursued (and examined); and the second proposition is, that when acting within the scope of its powers, *whether limited* (that is, special) *or general*, every intendment shall be made. But it is doubted, whether the two cases cited support the second proposition. In the second case, no "intendment" was made in favor of the court superior and of general jurisdiction, upon a matter of attachment, which is not a common law proceeding; and this case rather suggests a new rule, or a modification of former rules, such as this, that when some process or proceeding, not known at common law, is added to, and incorporated into, the proceedings of a court superior and general of jurisdiction, and made a part thereof, it is to be adjudicated as one of its ordinary powers, and not as a power or subject conferred upon it distinct from, and independent of, its common law jurisdiction. Thus, attachment, which is the subject of *Voorhees* v. *The Bank*, is added to, or incorporated into, the powers of the court, and is to be adjudged upon like its other powers. So, the subject

of mechanics' lien, is new, created by statute, and yet it is apprehended that this, and its process too, is to be adjudicated upon the same rules with the ordinary powers and proceedings of the court.    These remarks are made as indicating the obscurity of the subject, and the difficulty of ascertaining the true rules which should guide us.    This is seen even in the able and labored note above referred to, which is an attempt to reduce the subject to order.    We will, however, endeavor to extract some rules, which shall serve as guides in the determination of the cause before us. In regard to courts superior, and of general jurisdiction, every presumption is made in favor, not only of their proceedings, but of their jurisdiction.    This proposition is familiar, and needs no support.    But see 1 Smith's Lead. Cases (5th ed.), notes 816, 848, where the subject is considered, and the cases are cited.    This presumption is not exercised, however, in relation to the jurisdiction of a court inferior and limited, but must be shown.    Note, *supra*, pp. 816, 818, 822, 848, with authorities.    The rule is thus briefly stated in *Peacock* v. *Bell*, 1 Saund. 74.    "The rule for jurisdiction is, that nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears so; nothing shall be intended to be within the jurisdiction of an inferior court, but that which is so expressly alleged."    But where the jurisdiction of an inferior and limited court is shown, there the same presumption prevails in favor of its proceedings, that does in favor of those of a superior court.    See note, *supra*, 817, 818, 847, 848; *Reeves* v. *Townsend*, 2 Zabriskie, 396; *Wilson* v. *Wilson*, 18 Ala. 176; *Clark* v. *Blacker*, 1 Cart. 215; *Paul* v. *Hussey*, 35 Maine, 97; *Wight* v. *Warner*, 1 Doug. 384; *Fox* v. *Hoyt*, 12 Conn. 491; *Raymond* v. *Bell*, 18 Ib. 81.    "Whatever intendment may be made in favor of the decision, there can be none in aid of the right to decide," &c.    *Perrine* v. *Farr*, 2 Zabris. 356; *Bridge* v. *Bracken*, 3 Chand. 75; *Supero, Crawford Co.* v. *Leclire*, 4 Ib. 56; *Denipster* v. *Purnell*, 3 M. & G. 375; *Rowland* v. *Beale*, 1 Cowp. 19.    When inferior courts have not transcended their powers, " and their

jurisdiction has actually attached, it will not be lost by an irregularity in the mode of exercising it; and every intendment will be made in aid of the validity of the proceedings under it, which will be regarded as equally conclusive with those of courts of superior and general jurisdiction." Note, *supra*, 847, citing *Grignons' Lessee* v. *Astor*, 2 How. 319; *Brown* v. *Wood*, 17 Mass. 68; *McPherson* v. *Cunliff*, 11 S. & R. 422; *Reeves* v. *Townsend*, 2 Zabris. 396; *Den* v. *O'Hallon*, 1 Ib. 582; *Pierce* v. *Irish*, 31 Maine, 254; *Wyman* v. *Porter*, 6 Porter, 219; *Samuels* v. *Findley*, 7 Ala. 645; *Rey* v. *Vaughan*, 15 Ib. 497; *Cox* v. *Davis*, 17 Ib. 71 ; *Savage* v. *Benham*, Ib. 119; *Williams* v. *Sharp*, 2 Cart. 101; *Small* v. *Hampstead*, 7 Mo. 373; *Pendleton* v. *Pendleton*, 12 S. & M. 302; *Tryon* v. *Tryon*, 16 Vert. 313; *McFarlin* v. *Stone*, 17 Ib. 165; *Clark* v. *Holmes*, 1 Doug. 390.

"When, however, the existence of jurisdiction is once shown or admitted, the judgments of superior and inferior tribunals stand on the same footing, and are equally and absolutely conclusive," that is, when not appealed from, or when attacked collaterally. Same note, 820–848, citing *Heard* v. *Shipman*, 6 Barb. 445; *Steen* v. *Bennett*, 24 Vert. 303; *Farrar* v. *Olmstead*, Ib. 123; *Lawrence* v. *Englesby*, Ib. 42; *Wesson* v. *Chamberlain*, 3 Comst. 331; *Fort* v. *Battle*, 13 S. & M. 133; *Grear* v. *McLendon*, 7 Georg. 362; *Williams* v. *Sharp*, 2 Cart. 101; *McLean* v. *Hugarin*, 13 Johns. 184; *Cunningham* v. *Bucklin*, 8 Cow. 187; *Heard* v. *Shipman*, 6 Barb. 621; *Clark* v. *Holmes*, 1 Doug. 390; *Reeves* v. *Townsend*, 2 Zabris. 396. The next inquiry is, *how* shall the necessary facts or circumstances conferring jurisdiction, "be shown," "or appear," in courts of inferior jurisdiction? A good deal of the ambiguity of cases, seems to rest on the answer to this question, as applied in practice. A superior court is presumed to act rightly and within its jurisdiction, but an inferior court should set out the requisite facts on the face of its proceedings; note, *supra*, 816, 818, and many authorities. When the jurisdictional facts are stated on the face of the proceedings of an inferior court, this is taken as *prima facie* proof; or they are presumed to be as stated.

But these facts, thus shown by the record of inferior courts, may perhaps be contradicted, as by the papers in the cause, and in some instances by evidence *aliunde*. And they may also, oftentimes (if not generally), be proved by evidence *aliunde*, page 816 and authorities; page 820, citing *Jenks* v. *Stebbins*, 11 Johns. 224; *Barber* v. *Winslow*, 12 Wend. 102; *Clark* v. *Holmes*, 1 Doug. 390; *Denning* v. *Corwin*, 11 Wend. 648; *Borden* v. *Fitch*, 15 Johns. 121; *Harrington* v. *The People*, 6 Barb. 607; *Noyes* v. *Butler*, Ib. 613; *The People* v. *Cassels*, 5 Hill, 164; *Walker* v. *Mosely*, 5 Denio, 102; and page 843, as to parties, citing *Adams* v. *Jeffries*, 12 Ohio, 253; *Bigelow* v *Stearns*, 19 Johns. 39; *Corwin* v. *Merritt*, 3 Barb. 345; *Fisher* v. *Lane*, 3 Wilson, 334; *Ege* v. *Sidle*, 3 Barr, 124; *Commonwealth* v. *Green*, 4 Whart. 568; *Smith* v. *Rice*, 11 Mass. 507; *Chase* v. *Hathaway*, 14 Ib. 222; *Corliss* v. *Corliss*, 8 Vert. 373; *Enos* v. *Smith*, 7 S. & M. 85; *Gelstrop* v. *Moore*, 4 Cushman, 206; *Joslin* v. *Coughlin*, Ib. 134. The case of *Dykman* v. *The Mayor of N. Y.*, 1 Seld. 434, is a recent case on similar questions, and may possibly throw doubt on the foregoing proposition as to contradicting the record. The proceedings were those of commissioners, to appropriate lands to the use of the Croton water works. If the owner and the commissioners could not agree, it was brought into court. The action was ejectment, brought to recover lands so taken. GARDINER, J., says, "It (the disagreement) was distinctly stated in the petition, and sworn to upon the knowledge of one of the commissioners. This was all that was necessary to give the vice-chancellor jurisdiction *prima facie*. The fact was an issuable one," which, he says, "the party might have controverted, and then it must have been proved, but he was not at liberty to lie by, and in ejectment for the land, insist that due proof was not made;" and he adds: "I am inclined to think that if the requisite proof was made, to sustain the allegation, jurisdiction would attach, although the witness was mistaken or perjured." And FOOT, J., says that, "when the jurisdiction of a court of limited authority (the vice-chancellor), depends on a fact which must be ascertained

by that court, and such fact appears and is stated in the record of its proceedings, a party, who had an opportunity to controvert the jurisdictional fact, but did not, and contested upon the merits, cannot afterward, in a collateral action against his adversary in those proceedings, impeach the record, and show the jurisdictional fact therein stated to be untrue, and he cites *Mathew* v. *Hood*, 8 Johns. 50; *Griswold* v. *Stewart*, 4 Cow. 458; *Van Steenberg* v. *Bigelow*, 3 Wend. 42; *Brittain* v. *Kinnard*, 1 Brad. & Bing. 432; *S. C.*, 4 Moore, 50; *Smith* v. *Elder*, 3 Johns. 113.

The license for sale in the present case, having been granted by the District Court of Iowa, the question what is a superior, and what an inferior court, does not present itself. But another takes its place; which is, whether this superior court is, in the present instance, to be regarded as one of limited and inferior jurisdiction, and whether its proceedings in this matter are to be viewed as those of an inferior court? Here is a special authority, or power, or jurisdiction, conferred upon the court by statute provision. It is one which it had not by the common law, and which is not connected with, and is not made part of the ordinary proceedings of the court. It is not incorporated into them, but is independent of them. It is probably a question of authority, more than of reason, for it is doubtful if there is any principle of reason or justice which decides either way. But if the artificial rule be assumed, that where a superior common law court is acting, out of the common law line, by virtue of an authority specially conferred, it is acting as an inferior court, then in granting the license to sell, the District Court was, in effect, an inferior court, and its acts are to be viewed in that light. The note in 1 Am. Lead. Cases (5th ed.), 843, states the following rules on this subject: " The rule seems to be the same (as with an inferior court), when a superior court acts without the scope of its general and common law authority, and by virtue of a special and statutory power, for it then becomes necessary to show that the power has been strictly pursued in all essential particulars, both as it regards the subject matter of the cause, and

Cooper v. Sunderland.

the parties," and cites *Williamson* v. *Berry*, 8 How. 495; *Williamson* v. *Bell*, Ib. 566; *Webster* v. *Reid*, 11 Ib. 437; *Denning* v. *Corwin*, 11 Wend. 647. And the same note, on page 832, has the following: "Whatever may be the rule with regard to courts of general powers, when acting within the scope of those powers, it is well settled, that when they do not, and exercise a special and statutory authority, their proceedings stand on the same footing with those of courts of inferior and limited jurisdiction, and will be invalid, unless the authority on which they are founded, has been strictly pursued," and cites *Denning* v. *Corwin*, 11 Wend. 647; *Jackson* v. *Esty*, 7 Ib. 148; *Striker* v. *Kelly*, 7 Hill, 11; *Thacher* v. *Powell*, 6 Wheat. 119; *Boswell* v. *Otis*, 9 How. 336; *Matter of Mount Morris Square*, 2 Hill, 14; *Sharp* v. *Speer*, 4 Ib. 76; *Williamson* v. *Berry*, 8 How. 495; *Same* v. *Ball*, 8 Ib. 566; *Matter of Flatbush Avenue*, 1 Barb. 289; *Mayhew* v. *Davis*, 4 McLean, 213; *Embury* v. *Conner*, 3 Comst. 511.

Of these cases, the first four support the doctrine quoted, but the remaining nine, do not support either this or the preceding quotation. But time does not permit an examination of them, to point out the errors in the reference to them. The following cases support the doctrines just quoted: *Ludlow's Heirs* v. *Johnson*, 14 Ohio, 679; *Adams* v. *Jeffries*, 12 Ohio, 253; citing (not above cited) *Bend* v. *Susquehanna Bridge and Bank Co.*, 6 Har. & J. 130; *Smith* v. *Fowle*, 12 Wend. 9. On the other hand, there is a class of cases of high authority, which do not seem to consider whether the court is a superior or an inferior one, nor whether it is subject to the rules of an inferior court; but give full sway to the doctrine of presumptions. Of this class, are *Elliot* v. *Piersol*, 1 Pet. 328; *Thompson* v. *Tolmie*, 2 Ib. 157; *Ex parte Tobias Watkins*, 3 Ib. 193; *United States* v. *Arredondo*, 6 Ib. 691; *Voorhees* v. *Bank U. S.*, 10 Ib. 450; *Philadelphia and Trenton R. R. Co.* v. *Stimpson*, 14 Ib. 448; *Grignons' Lessee* v. *Astor*, 2 How. 319; *Barney* v. *Saunders*, 16 How. 535; *Perkins* v. *Fairchild*, 11 Mass.

227; *M'Pherson* v. *Cumliff*, 11 S. & R. 422; *Wright* v. *Marsh et al.*, 2 G. Greene, 95.

In *Elliot* v. *Piersol*, 1 Pet. 328, the court says: "Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct, or otherwise, its judgment, until reversed, is regarded as binding in every other court." In *Thompson* v. *Tolmie*, 2 Pet. 157, the heirs of Tolmie, deceased, brought a petition for partition in the Circuit Court for the District of Columbia, and partition was awarded; but the property being reported indivisible, it was sold. Afterwards, the heirs brought ejectment, and held the sale void, because none of the heirs had become of age at the time of the sale, and the statute *expressly prohibited a sale until the eldest was of age*. Mr. Key, of counsel for the plaintiffs, contended that the proceedings did not derive their authority from the general powers of the court, and that, therefore, it was necessary that all the facts upon which the powers were exercised, should appear. The court say: "These proceedings were brought before the court below collaterally, and are by no means subject to all the exceptions which might be taken on a direct appeal. They may well be considered judicial proceedings; they were commenced in a court of justice, carried on under the supervising power of the court, and did receive its final ratification. The general and well settled rule of law in such cases is, that when the proceedings are collaterally drawn in question, and it appears upon the face of them, that the subject matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceedings, either before the same, or an appellate court. If there is a total want of jurisdiction, the proceedings are void, and a mere nullity, and confer no right, and afford no justification, and may be rejected, when collaterally drawn in question." "The only objection," says the court, "that presents any difficulty, is, that it was proved that none of the heirs of Robert Tolmie had arrived at age when the sale was made, and how far this will affect the sale,

will depend upon the question, whether the proceedings in partition, when brought up in this collateral way, were open into an inquiry into that fact." They suggest the question, whether the jurisdiction depended upon that fact, and argue that it may well be inferred that the petition intended to assert that Margaret was of age; and say, that at all events, the age of the heirs was a matter of fact, upon which the court was to judge; that even if the jurisdiction of the court depended on that fact, it is by no means clear that it would be permitted to contradict it, on a *direct* proceeding to reverse any order or decree of the court. But to permit that fact to be drawn in question in this collateral way, is certainly not warranted by any principle of law. "The rules which apply to and govern titles acquired under sales made by order of orphans' courts and courts of probate, are applicable to the case now before the court." They refer to the above quotation from *Elliot* v. *Piersol*, 1 Pet. 340, and say : "This is the clear and well-settled doctrine of the law, and applies to the case now before the court. The jurisdiction of the court over the subject matter appears on the face of the proceedings, and its errors and mistakes, if any were committed, cannot be corrected nor examined, when brought up collaterally, as they were in the Circuit Court." But the case of *Grignons' Lessee* v. *Astor*, 2 How. 319, reviews the whole subject, and becomes very important. The administrator of Pierre Grignons, sold land belonging to his estate for the payment of debts, and the heirs bring ejectment to recover it, holding the sale void. The law of Michigan, in which state the case arose, made the same requirements of an administrator, and of a guardian, in order to obtain authority to sell. The license was granted by the county court (by which is understood a court of common pleas, or of general jurisdiction), which was authorized thereto by law. The law required the administrator to make a representation of the condition and indebtedness of the estate, and that such representation should be accompanied by a certificate from the judge of probate, certifying the value of the real and personal estate, and the amount of debts, and

also *his opinion* whether it is necessary that real estate should be sold.   The law also provided, that the court previously to passing on the representation, should order notice to be given. to all parties, or their guardians, and it directed, that before a sale, the administrator should enter into bond, and give a certain prescribed notice of the sale.   Several of these requirements are made under a *proviso*, which, according to the case of *Voorhees* v. *The Bank*, 10 Pet. 471, make them as conditions precedent to the exercise of the power.

Objections were made on all the above points, that the fulfillment of these requirements did not appear on the face of the record, nor in the papers.   The court say, the whole merits of the controversy depend on one single question. Had the county court of Brown county, jurisdiction of the subject on which they acted?   They define jurisdiction, citing 6 Pet. 709, and 623 ; 12 Pet. 718; S. S., 3 Pet. 205.   They style this, a proceeding *in rem*, citing 11 S. & R. 526, and say that the jurisdiction of orphans' courts, and all courts who have power to sell the estates of intestates, is irrespective of the parties in interest. .  The court, then, proceed to say, that no other requisites to the jurisdiction of the county court are prescribed, than the death of Grignons ; the insufficiency of his personal estate to pay his debts ; and a representation thereof to the court, making these facts appear.   Their decision was the exercise of jurisdiction which was conferred by the representation ; that it did then appear to the court that there were facts and reasons before them which brought their power into action, and that it was exercised by granting the prayer of the petitioner ; and if the decree does not specify the facts and reasons, nor refer to the evidence on which they were made to appear to the judicial eye ; they must have been, and the law presumes they were, such as to justify their action," citing 14 Pet. 458.   The recitation of facts in the license is referred to, but that is not so full as the order of the court in the case at bar.   They say : "After the court has passed on the representation of the administrator, the law presumes that it was accompanied by the certificate of the judge of pro-

bate, as that was a requisite, to the action of the court; their order of sale is evidence of that, or any fact which was necessary to give them power to make it; and the same remark applies to the order to give notice to the parties. This is a familiar principle in ordinary adversary actions, in which it is presumed after verdict, that the plaintiff has proved every fact which is indispensable to his recovery, though no evidence appears on the record to show it; and the principle is of more universal application in proceedings in rem, after a final decree by a court of competent jurisdiction over the subject matter. The granting the license to sell, is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not, is wholly immaterial, if no appeal is taken. The rule is the same, whether the law gives an appeal or not. The record is absolute verity, to contradict which there can be no averment or evidence. The court having power to make the decree, it can be impeached only by fraud in the party who obtains it. 6 Pet. 729. A purchaser under it, is not bound to look beyond the decree," &c. "These principles are settled as to all courts of record which have an original general jurisdiction over any particular subject; they are not courts of special or limited jurisdiction; they are not inferior courts in the technical sense of the term. That applies to courts which are created on such principles, that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction. The true line of distinction between courts whose decisions are conclusive, if not removed to an appellate court, and those whose proceedings are nullities, if their jurisdiction does not appear on their face, is this, a court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in its proceedings, the facts and evidence on which it is rendered, whose record is absolute verity not to be impugned by averment or proof to the contrary, is of the first description. There can be no judicial inspection behind the judgment, save by appellate power." "The court," they say, "has a right to

decide every question which occurs in a cause," citing 1 Pet. 340, " and such," they add, " must hereafter be taken to be the established law of judicial sales, as well relating to those made in proceedings *in rem*, as *in personam*," citing 10 Pet. 473. " Titles acquired under the proceedings of courts of competent jurisdiction, must be deemed inviolable in collateral actions, or none can know what is his own."

The case of *Perkins* v. *Fairfield*, 11 Mass. 227, which is several times cited in the cases in the federal court, was decided in accordance with the rules set forth in the above cases from Peters and Howard, although it was decided before them. The license was granted to administrators, by the Court of Common Pleas, upon a certificate from the judge of probate, not warranted by the circumstances of the estate, and the administrators did not give bond as required by statute. The Supreme Court say : " That court had jurisdiction of the subject matter. If that jurisdiction was improvidently exercised, or in a manner not warranted by the evidence from the probate court, yet it is not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the court, as an authority emanating from a competent jurisdiction." It is not easy to determine with clearness, how to class the above case of *Grignons' Lessee* v. *Astor*. It certainly bids defiance to the rule, that a superior court acting in a special matter, out of the course of its common law jurisdiction, acts as a court of inferior and limited jurisdiction. It must be classed, either, as a case giving to the superior court in such cases, the full weight of the presumptions which belong to its common law jurisdiction, or as one which considers all such cases as proceedings *in rem*. And either of these grounds, may be predicated of it. This case, and the rules adopted in the others from the Supreme Court of the United States, seem to take away the grounds and reasoning of many of the cases decided in the state courts. And, in truth, there is a necessity that some superior power should lay hands on them, and marshal them into order, or prescribe rules to which they should be squared; for it is doubtful whether a rule can be

extracted from them.   It is probable that the rules laid down in the foregoing federal cases, will be found subversive of the great mass of the state cases.

A few other cases will be referred to, bearing more immediately upon the points before suggested: *Ludlow's Heirs* v. *Johnson*, 1–4 Ohio, 679 ; *Lessee of Goforth* v. *Longworth*, 1–4 Ib. 750 ; *Ewing* v. *Higby*, 6–7 Ib. 340 ; *Le Grange* v. *Ward*, 11 Ib. 257 ; *Adams* v. *Jeffries*, 12 Ib. 253 ; *Payne* v. *Morland*, 15 Ib. 435 ; *Robb* v. *Lessee of Irwin*, 15 Ib. 689 ; *Bloom* v. *Bendick*, 1 Hill, 130 ; *Corwin* v. *Merritt*, 3 Barb. 341 ; *Ranoul* v. *Griffee*, 3 Md. Rep. 54.   Many cases treat these distinctly as proceedings *in rem*, even when the statute provides for notice.   Such are 2 How. 319 ; 11 S. & R. 432 ; 12 Ohio, 272 ; 6 Har. & J. 23 ; 7 Ohio, 201 ; 11 Mass. 227 ; 15 Ohio, 689 ; 9 Ib. 19.   And all those cases, impliedly, which give emphasis to the fact of the court having ·jurisdiction of the subject matter ; and such it undoubtedly is in its nature, for it certainly is not an adversary proceeding. Without finally determining whether a superior court, acting in a special matter, is to be treated as an inferior and limited court, we find in the foregoing investigation some method by which the case before us may be determined by rule, and not on detached cases only.   When a power is given to a court over a special subject which is not in the usual course of the common law, and a mode is prescribed, such mode must be pursued, whether the tribunal be a superior or inferior one ; and sufficient must appear to show the case to be within the reach or jurisdiction of the tribunal.   Whether in the case of a superior court, this sufficiently appears by the statute conferring the power, and the common law presumptions in favor of such a court (a petition being first filed to call up the power), the state and federal courts seem to differ widely.   If, however, sufficient appears on the face of the record (or proceedings) of the court, to give it jurisdiction under the law conferring the power, then the presumption attaches in favor of the remainder of the proceedings of the court, whatever that court may be.   But whether, and in what cases, the facts stated

in the record, may be contradicted, remains in doubt, even as regards an inferior court. See 1 Smith's Lead. Cas. (5th ed.) note, pages 820, 821, 824, 842. If there be a petition, on the proper matter of that nature, to call into action the power or jurisdiction of the court, the sufficiency of it cannot be called in question collaterally. This is for the appellate power only. If there be a notice or publication, or whatever of this nature the law requires in reference to persons, its sufficiency cannot be questioned collaterally. 1 Smith's Lead. Cases, note, *ut supra*, 837, 843; *Wright* v. *Sheldon*, 1 Seld. 497; *Borden* v. *The State*, 6 Eng. 519; *Ewing* v. *Higby*, 6–7 Ohio, 343; *Paine* v. *Moreland*, 15 Ib. 435; *Wright* v. *Marsh et al.*, 2 G. Greene, 109. The questions made in the case at bar, may be quickly settled under those rules, so far as they are to determine them. The first objection made to the proceedings of the District Court is, that it had jurisdiction of neither the subject matter nor the parties. We do not understand that a serious question is made as to the jurisdiction over the subject, for the authority to grant such a license, is given by both the acts before referred to. Next, is the want of notice to the parties, as is alleged; that is, to the minors, or to the next of kin. Chapter eleven, section eight of the second act referred to, provides that "no such license shall be granted, until notice by public advertisement or otherwise, as the court shall order, shall have been given to the next of kin of the ward, and to all persons interested in the estate," &c. This is the section applicable here, and it may be doubted whether it intends a notice to the wards. But at all events, it is sufficiently answered by the record, which finds that the court (among other things), being satisfied from publication, properly filed, that the notice required by law has been given," orders, &c. This chapter does not require personal service. The above is sufficient to give jurisdiction, at least until contradicted by proof, and we do not now decide whether such proof could be received. As to the objection that the petition should lie over one term, and the publication should be made between the terms, we do not understand that this

practice relates to matters of this kind—matters of a probate nature. But, however that may be, the sufficiency of the notice is a question for appeal, and cannot be brought up collaterally. So far as these objections go, the sale will have to be sustained, unless we find difficulty in the act of 1843, chap. 11, § 20. It is as follows: "In case of an action relating to any estate sold by a guardian under the provisions of this chapter, in which the ward, or any person claiming under him, shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings, provided it shall appear:

" First. That the guardian was licensed to make the sale by a court of competent jurisdiction.

" Second. That he gave bond (approved), in case one was required by the court granting the license.

" Third. That he took the oath prescribed in this chapter.

" Fourth. That he gave notice of the time and place of the sale, as prescribed herein.

" Fifth. That the premises were sold accordingly, at public auction, and are held by one who purchased them in good faith." One of the leading purposes of the preceding investigation, is to ascertain *how* the required matters must or may appear, and in what sense the word "appear" may be taken in the foregoing statute. Upon this we are satisfied. The next inquiry is, as to whether the provisions of the above section 20, of chap. 11, Stat. 1843, are to be taken as peremptory, or as directory only. It is true that the argument in favor of the directory character of this section, is countenanced · by the penalty provided by the next section, in case of any neglect or misconduct in the proceedings of the guardian, by which any person interested shall suffer damage. But the reasoning, on the other hand, is too weighty to be overcome by this consideration. In the first place, why are these provisions in the statute ? Do they not bear a specific meaning ? Do they mean no more than the settled rules would have taught, without them ? Do they not at once impress the mind as peremptory requirements ? The language is, that "the sale shall not be avoided on account of

any irregularity in the proceedings, provided that it shall appear that the five following facts exist. Does not this language admit of this change of proposition: The sale shall not be avoided for any irregularities, *except* in the following particulars, and therefore that the sale *may* be avoided on account of irregularities in the following particulars; and again, that the sale may be avoided, provided the following facts do not appear. The sense manifestly is, that the sale shall not be held void for minor irregularities, nor for any such, if certain leading requirements are observed. But these must be observed. The contrary reasoning would be this, and no other: The sale shall not be avoided, if these things appear (which is by statute); and if they do not appear, the sale will be sustained upon adjudicated principles. By this process, it is brought to pass that whether they appear or not, is immaterial, since in the one case the statute sustains the sale, and in the other, the adjudicated cases. This fritters away the statute, and makes it mean nothing. But we believe it was written and enacted to have its appropriate effect, and however the rules of law, and the adjudicated cases, might dispose of these matters, if this section did not exist; and however important we may esteem it, to sustain sales of this description, when it can be done fairly, our duty now is only to square this case by these provisions, and find how it bears the test, and pronounce accordingly. As to the first condition, we have found that the guardian was licensed by a court of competent jurisdiction. As to the second, no bond was required by the court. The third is, "that he took the oath that is prescribed in this eleventh chapter," section 11. Such guardian shall also, before fixing on the time and place of sale, take and subscribe an oath, in substance like that required to be taken by executors, administrators, and guardians when licensed to sell real estate. This clearly refers to section 11, of chapter 10, where the oath is given, 'and it is " that in disposing of the estate which he is licensed to sell, he will use his best judgment in fixing on the time and place of sale, and that he will exert his utmost endeavors, to dispose of

the same in such manner as will be most for the advantage of all interested therein." Without the foregoing provision of the 20th section, on which we are commenting, such an oath simply required, might be *presumed* after a confirmation of the sale, on the principles of the cases before cited; but under this statute, there can be no such presumption. The importance of this requirement is not for us to decide; but we can see its fitness in the present case, at least, when it is in evidence that the sale was made to the *husband of the guardian.* There is no evidence, either in the record, or in the papers, nor is any brought to our knowledge *aliunde,* that this oath was taken. The guardian makes a report of her sale, but does not state it. There is a judgment confirming the sale, but this goes no farther than to say (in allusion to the report), " which having been examined by the court here, and the court being fully advised of and concerning the premises, it is ordered," &c. The statute says it must " appear " that she took this oath, and the least we can require is, that the record shall aver it; or that it should appear otherwise. The above record does not answer the call of the statute.

As to the fourth requirement, "that she gave notice of the time and place of sale, as prescribed." This refers to section 12 of chap. 10, which we think refers to the act of 1839 (Stat. 1843, page 433, § 11), which provides that the court shall direct the notice. In this case, the court directed a notice of the sale, and the report recites that she advertised " according to law." But there is no such notice returned among the papers, nor any other evidence of its having been given. But, on the strength of some of the cases above cited, we are inclined to think, that this allegation in the report, followed by the confirmation, a part of which is above quoted, is sufficient *prima facie.* As to the fifth condition, " that the premises are held by one who purchased them in good faith," we are disposed to consider this as meaning one who holds them at the time of the action, and not as referring to the original purchaser solely; and there

is nothing tending to show that the defendants did not purchase in good faith.

Therefore, because it does not appear that the guardian took the oath required by the statute, the sale must be held void. This result dispenses with the necessity of considering the other points in the cause.

The judgment of the District Court is affirmed.

NOTE BY THE COURT.—We desire to say to the profession, both for this and other causes, that our access to books is very limited. We cannot, therefore, in this case, determine the correctness of the citations of many of the cases in the note in 1 Smith's Leading Cases, but we give them, that others, having better opportunities, may examine.