In the matter of FLATBUSH AVENUE in the city of Brooklyn.

On an application to confirm the report of commissioners of estimate and assessment, affidavits made by persons who are only interested in the question, and not in the result of the proceedings before the court, may be read, in opposition to the motion.

When private property is to be taken for the public use, it is important that all the forms of the law should be complied with; for those forms have been devised, and certain restrictions adopted, for the protection of private right against public oppression.

In all cases of public improvements, where private property is to be taken without the owner's consent, at the demand of a local corporation, it is essential to inquire whether all the requisitions of the statute have been complied with. And courts cannot allow any essential departure from them, without jeoparding private rights, which have no adequate protection except in our courts.

The acts of the legislature relative to the city of Brooklyn, and the opening of streets and avenues therein, give no authority to proceed against unknown owners of lands; and if any of the owners of land required for a street are unknown, a lawful assessment cannot be made.

It is an inflexible rule of law, that no man ahall be deprived of his property without an opportunity of defending himself. Upon this principle, a report of commissioners of estimate and assessment will not be confirmed if it contains an assessment upon property in Brooklyn belonging to unknown owners.

What degree of particularity is necessary, in describing the owners of property assessed for the opening of an avenue in the city of Brooklyn.

The commissioners are required by the statute, to specify in their report the respective interests of the owners, the amount awarded to the several parties interested, the amount assessed upon the different interests in the premises affected, and to designate the interests of the parties, and their liabilities in relation thereto. And if their report does not contain these particulars, it will not be confirmed.

Courts must obtain jurisdiction as well of the person to be affected by their judgment, as of the subject matter.

---

### In the matter of Flatbush Avenue.

---

It sometimes becomes necessary, especially in proceedings *in rem*, to proceed against persons who are unknown; but courts have no power to do so, unless the legislature has interposed, and by some sort of substituted service, given to the court jurisdiction over the person.

It is the duty of commissioners of estimate and assessment in the city of Brooklyn, to estimate the expenses of opening a steeet or avenue. This includes not merely the costs and expenses of making the assessment, but also the costs and charges of making the improvement, and the amounts to be paid for the lands and buildings required to be taken for it. And the several items of the expense should be stated in the report.

The commissioners are also required to estimate the benefit to be derived from the improvement, not only in the aggregate, but that to be derived by the parties respectively.

Where it appeared from the report of commissioners respecting the opening of an avenue, that such avenue crossed a public turnpike at two distant points, and thus opened a road whereby travellers could avoid the toll gate of the company, thereby materially injuring, if not destroying, the value of the franchise; for which injury the commissioners had not awarded any damages, but they had awarded the company two small sums for the damage arising from taking the road for the avenue, and had assessed them an equal amount for the expense of opening the avenue; the court refused to confirm the report.

The franchise which a turnpike company obtains from the legislature, by its act of incorporation, is as much the subject of value to the company as the private property of any individual. And they have as clear a right as any person owning land to be indemnified for an injury sustained by them in consequence of the appropriation of their property to the public use.

The doctrine that because a turnpike company derived its franchise from the same source from which the city of Brooklyn obtained its power to open an avenue, therefore the company are not entitled to any compensation for an injury to their property, is untenable.

*N. F. Waring*, for the corporation of Brooklyn, moved to confirm the report of commissioners of assessment and estimate of the expense of opening the above mentioned avenue.

*J. Dykeman*, for Mary Powers, objected to the confirmation. 1. Because she had not been awarded a fair amount of damages for her land taken for the avenue. 2. That she was assessed for benefits which did not exist. 3. That the whole expense of the improvement, including the damage for land taken, will far exceed the amount of benefits to be derived from the improvement. 4. That the report was not in the form required by the statute. 5. That the report contained no esti-

mate of benefits, and no account of the expense of the improvement. 6. That it contained no statement of the principles on which the report was founded. He read a large number of affidavits which had been laid before the commissioners, going to show that the whole benefits of the improvement fell far short of the expenses.

*Mr. Waring* objected to the reading of some of the affidavits; because made by some of the persons who had been assessed for damages or benefits. He cited *In re Cherry-street*, (19 *Wend.* 659;) *In re 29th-street*, (1 *Hill*, 191.)

EDMONDS, J., overruled the objection; saying that those cases related only to the admissibility of the affidavits of parties to the proceedings. That the affidavits now offered were of parties who were only interested in the question, and not in the result of the proceeding before the court; that none of them had appealed; nor could they be heard on the question of confirmation.

*W. Rockwell*, for the Jamaica and Flatbush Turnpike Company, objected to the confirmation, because the avenue in question crossed the turnpike at two distant points, and thus opened a road whereby travellers could avoid the toll gate of the company; thereby materially injuring, if not destroying, the value of the franchise. For which injury the commissioners had not awarded any damages; but they had awarded the company two small sums for the damage arising from taking the company's road for the avenue, and had assessed them an equal amount for the expense of opening the avenue. He cited *Bloodgood* v. *Mohawk R. R. Co.*, (18 *Wend.* 9;) *Fletcher* v. *Auburn R. R. Co.*, (25 *id.* 462;) *Trustees, &c.* v. *Auburn and Rochester R. R. Co.*, (3 *Hill*, 567;) *Seneca Road Co.* v. *The same*, (5 *Id.* 170.)

*N. F. Waring*, contra, insisted that the right of the turnpike company had been granted subject to the public wants, whose

In the matter of Flatbush Avenue.

demands, as manifested in the laying out of this avenue, were superior to the company's right; and that the franchise was not the subject of damage within the statute. (*Charles River Bridge case*, 11 *Peters*, 420.)

EDMONDS, J. Under our institutions, no man can be deprived of his rights, save by the law of the land, or the judgment of his peers. Among the rights thus protected, is the right of private property. And when private property is to be taken, as in this case, for the public use, it is important that all the forms of the law should be complied with; for these forms have been devised, and certain restrictions adopted, for the protection of private right against public oppression.

In all cases of this kind, where private property is to be taken without the owner's consent, at the demand of a local corporation, it is essential to inquire whether all the requisitions of the statute have been complied with. And courts cannot allow any substantial departure from them, without jeoparding private rights, which have no adequate protection, except in our courts.

It is under the guidance of such views that I proceed to examine this report, and the objections made to its confirmation.

As to unknown owners, &c.

The acts of the legislature under which these proceedings are had, no where give the authority to proceed against owners unknown. On the contrary, the second section of the act of 1833, to reduce the law incorporating the village of Brooklyn, and the several acts amendatory thereof, into one act, and to amend the same, (*Laws of* 1833, *p.* 499,) requires that the report of the commissioners shall contain "the names of the persons interested in the premises and a statement of their respective interests," and "the proportion of the expense of the improvement which each ought to bear." The second section of the act of 1838, relative to the city of Brooklyn, (*Laws of* 1838, *p.* 119,) is equally explicit. The report shall contain "the names of the persons interested in the property taken or assessed for the improvement, the amount awarded to the different parties interested in the lands and premises required for the improvement, the

In the matter of Flatbush Avenue.

amount assessed on each piece of land and on the different interests therein," and " so many and such other different columns and tabular statements as may be necessary to designate the interests of parties in the lands and premises required for the improvement, and their liabilities in relation thereto."

There are several departures, in this report, from these explicit requirements of the statute, viz. "Estate of Thomas Poole, William Powers executor." "Burying ground, descendants of John Cowenhoven, deceased." "S. A. Willoughby and J. D. Lawrence, trustees." "Cornelia Jackson's trustees." "Estate of Hamilton H. Jackson." "Maria Jackson's trustees." "William S. Packer and others." "Estate of John Cowenhoven." "E. Waterbury and son." "Burying ground." "—— Gilbert." "Unknown owners." "Unknown owners, or Long Island Rail-Road Company." All these specifications are wrong, because in disregard of the statute. The names of the parties are not given ; nor is there any statement of their respective interests. There is no statement of the amount awarded to the several parties interested, nor of the amount assessed upon the different interests in the premises affected ; nor is there any designation of the interests of the parties, or their liabilities in relation thereto. Yet all these are matters on which the commissioners are required by the statute to adjudicate ; and when they omit so important a part of their duty, this court will not confirm their report.

The objection to the award to, or the assessment upon, "unknown owners," is still broader. It is an inflexible rule of law that no man shall be deprived of his property, without an opportunity of defending himself. What opportunity do owners have of defending their rights, when they are proceeded against by a designation which embraces any other living being as well as them ? Courts must obtain jurisdiction as well of the person to be affected by their judgment, as of the subject matter. What jurisdiction did the commissioners obtain, or has this court now got, over persons designated so generally as "unknown?" It sometimes becomes necessary, especially in proceedings like this, *in rem,* to proceed against persons who are unknown ; but courts have no power to do so, unless the

In the matter of Flatbush Avenue.

legislature has interposed, and by some sort of substituted service, given the court jurisdiction over the person. Hence frequent enactments occur in that respect. Thus, in proceedings for partition, our revised statutes have made such a provision. (2 *R. S.* 319, § 13. *Id.* 329, § 84.) And so strict have been the courts that a judgment in partition was held to be utterly void, because the record did not contain the averment that an affidavit was filed stating that the owner was unknown. (*Denning* v. *Corwin*, 11 *Wend.* 647.) In the laws relative to assessments in New-York, (2 *R. L.* 408, § 178,) and other cities, (*Sess. L. of* 1829, 192, § 32, &c.) similar provision is made for the case of " unknown owners." But no such provision is contained in the acts relative to assessments in Brooklyn. And if any of the owners there are unknown, a lawful assessment cannot be made. The legislature alone can provide the remedy; and until it does so, the courts cannot confirm such a report, without violating one of their most sacred principles of action; that, namely, of giving the party interested an adequate opportunity of being heard in defence of his right.

It was conceded on the argument, by all parties, that the award to Calkins and Darrow was erroneous, because it was for buildings erected after the act of 1835, (*Sess. L. of* 1835, *p.* 139, § 13,) and for which, by that act, the commissioners were forbidden to make any allowance, because erected in part or in whole on one of the avenues laid out by the commissioners appointed under that act.

It is the duty of the commissioners to estimate the expense of the improvement. This includes not merely the costs and charges of making the assessment, but also the costs and charges of making the improvement, and the amounts to be paid for the lands and buildings required to be taken for it. If the action of the commissioners in this respect was final, it might not be necessary for them to make any record of the items constituting this expense. But there are many reasons why they should disclose the basis of their judgment in this respect. If the assessment was not to be made until after the improvement was all completed, the expense of it would be a

In the matter of Flatbush Avenue.

mere matter of calculation. The sums actually expended, being added together, would give the result, with entire certainty. But the assessment is to be made before the improvement is completed. The amount of the expense becomes therefore a matter of estimate only; requiring the exercise of judgment, and not of calculation alone.

The report is to be submitted to the court for confirmation; and if in any respect the commissioners have erred in their estimates, their decision may be reversed or corrected. Unless the basis of their decision is disclosed, and the items of expense set down, how can the court, to whom the report is offered for confirmation, determine whether it is right or wrong, either in the aggregate or as to particular items, or the value of particular lots? And how can parties know in what the error consists, or be able to point it out to the appellate tribunal? Take the case of Calkins and Darrow, (which it is conceded is an error,) as an instance. It is erroneous to award them damages for their buildings, yet correct to allow damages for their land. The award to them is $1600, but the report does not say whether it is for land or buildings; and if the fact that part of it was for buildings had not been stated to the court, out of the report, the court would have had no means of determining whether the report was right or wrong, but might have ignorantly confirmed an award which is in direct contravention of the statute. It is with this view that the act of 1838, requires a map to be made which shall designate, by feet and inches, the several pieces of land necessary to be taken, and requires the commissioners to report the whole expense of the proposed improvement; *and the several items thereof.* This duty, the report almost entirely omits to perform. It gives only a few items, showing the expense of making the assessment, and nothing more. It no where shows what is the whole expense of the improvement, nor what are the items of expense growing out of the value of lands and buildings taken or growing out of making the improvement itself. The column in their tabular report, which is headed " Amount and items of expense of opening," has not an entry in it, from beginning to end, except

five items of the expense of making the assessment. Certain sums are awarded, and certain sums are assessed, but whether those sums are legitimate items of the expense of the improvement, or arbitrary sums awarded by the commissioners, the report furnishes no means of ascertaining. And I am called upon to exercise the important function of pronouncing judgment upon this report, in profound ignorance of all the facts on which alone the judgment could safely be predicated.

The estimate of benefits is liable to the same objection. The commissioners are required to estimate the benefit to be derived from the improvement, not only in the aggregate, but that to be derived by the parties respectively. (*Laws of* 1833, *p.* 499, §§ 1, 2.) And the number of the pieces of the land assessed for benefits. (*Laws of* 1838, *p.* 119, § 2.) Of all this there is not a word in the report. There is simply an assessment of certain sums upon the owners supposed to be benefitted; but how much they are benefitted, in the aggregate, or respectively, is no where set down. The importance of this omission is apparent from these considerations. 1. That it is impossible for the court to determine, under the fourth section of the act of 1833, whether the assessment exceeds the value. 2. It is equally impossible to determine whether under the fifth section of that act, in any case, the estimated damages exceed the estimated benefits. And 3. It is also impracticable for me to perform the duty devolving upon me under the decision in 11 *Wendell*, 153, *in the matter of Albany-street*, where the court declared that where property is not and cannot be benefitted, to the extent of the amount assessed upon it, it is the duty of the court to send back the report until property can be found sufficiently benefitted to defray the expense, or until the proceedings shall be discontinued. I can learn from the report that the amount of damages awarded for lands and buildings taken for the improvement is $52,590,74, and that the whole amount assessed for the improvement is $57,078,65, but I can in no respect ascertain from the report whether the benefits to be derived from the improvement equal either of those sums.

Either of the objections stated in this brief review, which

embraces all the allegations made on the part of Mrs. Powers against the confirmation of the report, would be sufficient to warrant me in sending it back; and I might have contented myself with the discussion of only one of them. But I have thought it advisable, in order, if possible, to prevent farther litigation, to consider all the objections; as a guide to future action in the matter. With the same view I proceed to consider the objections to the report which are raised by the turnpike company. It would seem from the statement made on the argument, and which I understood to be undisputed, that the opening of this avenue very materially impairs, if it does not entirely destroy, the value of the franchise of the company, by opening a road on which travellers' may avoid their toll gate. For this injury the commissioners have not awarded any thing, so far as I can understand their report. In one place they have awarded the company $20 for damages for land taken; and in the same breath have assigned them four times $5 for benefits. And in another place they have awarded them $30 as damages for land taken, and at the same moment assessed them six times $5 for benefits. Thus virtually making to the company no allowance whatever for the very serious injury to the franchise which it was conceded this improvement would be. 'This was defended before me on the ground that the franchise was a public grant, subordinate to the public wants, at whose demand this avenue was laid out, and that it had been laid out by the same authority which had granted the franchise, viz. that of the legislature.

It is difficult for me to appreciate the grounds on which the commissioners refused to allow to the turnpike company any damage for the injury which they had confessedly sustained by the opening of this avenue. The franchise which they had obtained from the legislature, was as much the subject of value to them as the private property of any individual damnified by this improvement; and they had as clear a right as any individual to be indemnified for any injury which they might sustain by the appropriation of their property to the public use. The idea that, because the company derived its franchise from

---

In the matter of Flatbush Avenue.

---

the same source from which the city of Brooklyn obtained its power to open this avenue, therefore the company were not entitled to any compensation for an injury to their property, is as untenable in law as it is unsound in morals. If this avenue had been merely a parallel road with the turnpike, perhaps the doctrine of the Charles River Bridge case (11 *Peters*, 420) might have been applicable. But such is not this case. At two points, this avenue invades and takes the land which the company had obtained under their act of incorporation; and thereby the company is brought directly within the statute under which the commissioners have proceeded, and which directs them to estimate the damage to be sustained by the owners of such lands and buildings as may be affected by the improvement, (*Laws of* 1833, § 1,) and to make a statement of the damage which the persons interested in the premises taken have sustained from such improvement. (*Id.* § 2.)

The case of *The Seneca Road Co.* v. *The Auburn and Rochester Rail Road Co.*, (5 *Hill*, 170,) is decisive of the point that this turnpike company is entitled to recover the damage which it has actually sustained by this improvement. Whether that damage has been awarded to them, it is impossible for me to ascertain from this report. There is no statement as to the value of the land taken, of the damage it has sustained, or of the benefit it has derived from the improvement. And for this reason, if for none other, I must refuse to confirm the report.

The report must therefore be sent back, and the motion to confirm be denied, with costs. As the former commissioners have not acted in unison, I think it most advisable to appoint new commissioners.