# DECISIONS

# Supreme Court of Florida,

### A T

## TERMS HELD IN 1859.

---

EDWARD BRADFORD, APPELLANT, vs. A. S. COLE, AP-
PELLEE.

1. The fact of a road having been an old one has no weight in determining
an application for the establishment of a road under the statute.

2. A petition for the establishment of a road under the statute should be
signed by twelve or more householders, inhabitants of the county, praying
for the establishment of a neighborhood or settlement road, and not by an
individual representing his own interests.

This case was decided at Tallahassee.

Appeal from Leon Circuit Court.

The opinion of the Court contains a full statement of
the facts of the case, to which reference is made.

*Archer & Papy* for appellant.

*J. B. Galbraith* for appellee.

2

BALTZELL, C. J., delivered the opinion of the Court.

This case arises on an appeal to the Circuit Court from an order of the County Commissioners of Leon county establishing a road. That Court having affirmed their decision, an appeal has been taken to this Court presenting the propriety of their action.

The appellee Cole presented a petition, alleging that "there has been on the proposed route a road, running through Dr. Edward Bradford's land, of ingress and egress, for the last fifteen or twenty years; that it is the nearest road of the petitioner to Tallahassee and to that portion of the neighborhood in which his practice lays; that it would inconvenience persons sending for him in his professional business as a physician and compel them to go some five miles farther, and he prays the Commissioners to give it consideration and report whe- ther or not the said Bradford would be damaged more by the road being opened or the community by its being closed." To this the signature of A. S. Cole is attached. Added to this is a writing to this purport: "We, the un- dersigned, residents of the neighborhood, join with A. S. Cole in his petition." Signed, R. C. Williams, and some twenty others.

The Commissioners appointed three persons to view and mark out said road and report to the Board, as the law directs, who reported that they had marked out a road, giving its course and distance, and also stating their belief that the road is necessary and should be estab- lished, and that it would be of great convenience to the inhabitants, and further, that it has been a neighborhood road for a great many years. The Board of County Com- missioners adopted this report, after hearing testimony and argument of counsel, and declared the road "a pub- lic neighborhood road."

Bradford vs. Cole.—Opinion of Court.

The fact of this having been an old road cannot have weight in the consideration of the case; for, if the party has rights through this, there is no need of his application, and his remedy is by indictment for obstruction, or action on the case, &c. We confine ourselves, then, to the application to establish a new road. The subject is one of greater interest and importance than would seem at first sight. The right of the citizen to his property—to his land—to have it free from the molestation and intrusion of others for any purposes inconsistent with his own use and enjoyment, has been declared and recognized in the earliest periods of English and American history. Hence it is said in the text-books, that "the Legislature may not arbitrarily strip the subject of his property in an arbitrary manner, but by giving him a full indemnification and equivalent for the injury thereby sustained. The public is considered as an individual treating for an exchange. All that the Legislature does is to oblige the owner to alienate his possessions for a reasonable price, and even this is an extension of power which the Legislature indulges with caution."—1 Black. Com., 139.

An American writer of eminence expresses himself with force more fully as to the right with us and says: "In a State governed by a written Constitution, if the Legislature should so far forget its duty and the natural rights of an individual as to take his private property and transfer it to another when there is no foundation for the pretence that the public is to be benefitted thereby, such an abuse of the law of eminent domain would be an infringement of the letter as well as the spirit of the constitutional law and therefore is not within the general powers delegated to the Legislature."—Angel on High., 59; Varick vs. Smith, 5 Paige, 137.

The same writer again states: "The doctrine that the

right of eminent domain (that is, the right to take from the citizen his land,) exists for every kind of public use or for such a use when merely *convenient*, though not *necessary*, does not seem to be clearly maintainable, it being too open to abuse. A road, if really demanded in particular forms and places to keep up with the wants and improvements of the age, such as its pressing demands for easier social intercourse, quicker political communication or better internal trade, and advancing with the public necessities from blazed trees to bridle paths and thence to wheel roads, turnpikes and railroads. But when we go to other public uses, not so urgent nor difficult to be provided for without this power of eminent domain, and in places where it would be only *convenient but not necessary*, strong doubts may be entertained of its applicability. The user must be for the people at large, for travelers, for all—must be a right by the people—must be under public regulations as to tolls or owned or subject to be owned by the State."—Angel, § 86.

In the case of the West River Bridge Company vs. Dix, decided by the Supreme Court of the United States after elaborate argument and very mature consideration, views were expressed by the Court and more particularly by that distinguished man and eminent jurist, Judge Woodbury, well deserving of regard. "*I* am even disposed to go further and say, that if any property of any kind is not so situated as to be either in the direct path for a public highway or be really needed to build it, the inclination of my mind is that it cannot be taken against the consent of the owner; because, though the right of eminent domain exists in some cases, it does not exist in all, nor as to all property, but probably as to such property only as, from its locality and fitness, is necessary to the public use."—4 Myl. & Craig, 116; 1 Rail. cases, 176.

And also, for aught I now see, circumstances must, from its locality and the public wants, raise an urgent necessity for it. The public necessities are spoken of usually as the fit occasion to exercise the power, if it be not derived from them in a great degree, and the reason of the case is confined to them. The ancient *trinoda necessitas* extended to nothing beyond such necessity. It may be and truly is that individuals and the public are often extensively benefitted by private roads as they are by mills and manufactories and private bridges, but such a benefit is not technically nor substantially a public use unless the public has rights.—1 Rice, 388. And, in point of law, it seems very questionable as to the power to call such a corporation a public one and arm it with authority to seize on private property without the consent of its owners. Again, "It is not enough that there is an act of incorporation for a bridge, a turnpike or railroad to make them public, so as to be able to take property constitutionally without the owner's consent, but their uses and object or interests must be what has just been indicated—must, in their essence, character and liabilities, be public, within the meaning of the term public use."—6 Howard S. C. R., 545–'7.

As to the mode of proceeding, it is laid down to this effect: "Under our institutions, no man can be deprived of his rights, save by the law of the land or the judgment of his peers; 'and when private property is to be taken, as in this case, for the public use, it is important that all the forms of law should be complied with, for these forms have been devised and certain restrictions adopted for the protection of private right against public oppression."—By Edwards, Judge, 1 Barb., 289; Angel on High., § 122.

With all this, we are not satisfied to declare that the law providing for the establishment of a neighborhood road

without the consent of the owner is unconstitutional. The point has not been made before us nor argued, and passing upon a question of such importance should only be after serious deliberation and required by the stern necessities of the case. Upon other grounds, we think the proceeding in this case is not tenable. There was no application to the County Commissioners for the establishment of a neighborhood road, nor is such established. In cases of application for a settlement or neighborhood road, the order should be for the establishment of such road, and not a public road. The petition should be signed by twelve or more householders, inhabitants of the county, *praying* for the establishment of a neighborhood or settlement road. This petition makes no such prayer and with difficulty may be regarded as the act of the twelve or more persons connected with the application. The prayer is to ascertain "whether Bradford would be damaged more by the road being opened or the community by its being closed." We have said that there is no prayer, as directed by law, for a neighborhood road; so far from it, the petition sets forth a private grievance in being deprived of the use of the road and being compelled to go to a greater distance by the individual applicant, and the injury of himself and his customers, his patients, (he being a physician,) in getting his services. Now this is plainly an individual act and individual injury, for which the law gives no redress, or not such as this law prescribes. We are not for extending to proceedings of this kind technical rules, or requiring more than a substantial compliance with the law, yet, in the present instance, we can but regard this objection as of the essence of the matter and fatal to the entire proceeding; for, if mere individual benefit, profit, convenience or advantage is to operate in grants of this kind, where is it to end? The mer-

chant, mechanic, millman, planter, will alike have interests to subserve by having roads to his house, store or workshop, and the whole country be cut up by private roads. Take away the private inconvenience to petitioner and there is no excuse nor pretence for the road, and if he leaves or removes from the neighborhood, there would seem to be no use for the road. Rightly, the petition should be by the people of the neighborhood, setting forth a neighborhood necessity and praying for a neighborhood, not a private road. In case of objection, the proceeding and suit should be by these petitioners, and not by an individual representing his own interests.

The order and decision, as well of the Board of County Commissioners as of the Circuit Court, will be reversed and set aside with costs and the case remanded to the Circuit Court that the proceeding may be dismissed.

PEARSON, J., dissenting.