Gilmore, 0. J.
The proceedings out of which the controversy in this case has grown, were instituted before the •council of the city of Cleveland, for the opening and ex *557 tension of Bond street, and the appropriation of lands necessary for that purpose.
The sections of the municipal code that need be here particularly referred to as applicable to the proceedings are the 539th section, as amended April 12, 1873 (70 Ohio L. 126), which provides, among other things, that the council “ shall have power to assess the costs and expense of such appropriation and improvement upon the lots and lands benefited thereby, including lots and lands that are contiguous and adjacent as well as those that abut upon said street;” and section 583, which, as amended at the same time, prescribes the mode of appropriating the property sought for the purpose of opening and extending a street, and also further provides a3 follows: “ The assessments made for the purpose of opening, extending, and widening such street, alley, or highway shall be made and approved in accordance with the provisions of sections 577, 578, 582, 584, 585, 586, 587, 588, and 589, and subject to the limitations in section 543 (as amended May 2,1871) of an act entitled an act to provide for the organization and government of municipal corporations, passed May 7, 1869, to which this act is amendatory.”
Section 584, which, is one of those referred to, reads as follows: “ In all eases in which it is determined to assess the whole or any part of the cost of any improvement upon the lots of lands bounding or abutting upon the same, or upon other lots and lands benefited thereby, the council may require the board of improvements, or may appoint three disinterested freeholders of the corporation or vicinity, to report to the council an estimated assessment of such cost on the lots or lands to be charged therewith, in proportion, as nearly as may be, to the benefits which may result from the improvement to the several lots or parcels of land so assessed, a copy of which assessment shall be filed in the office of the clerk of the corporation for public inspection.”
The other sections referred to in section 583, as amended, with the exception of section 543, which contains certain *558 per centum limitations, point out the manner in which the power conferred by section 539 is to be exercised.
This section (539), as amended in 1873, is the first law in this state that authorized municipal corporations to levy assessments to pay for street improvements, or for land appropriated for opening and extending streets, on the “ property benefited thereby,” without reference to frontage •or the value of the abutting property as assessed for taxation.
The plaintiff here is the owner of a lot fronting seventy-three feet on Superior street, adjoining Bond street, and extending back 250 feet. It is valued and placed on the •duplicate for taxation at $18,018.
Bond street was opened and extended about thirty rods, .and, to pay for the lands appropriated for this extension, the plaintiff’s lot is assessed $14,600. He seeks to enjoin the collection of the assessment, on many grounds, including this — that it invades his right of private property, in violation of several provisions of the constitution.
All the assessment cases heretofore decided in this court were frontage assessments, and apportioned by frontage. Jt is well settled that such assessments, when properly made by municipal corporations, to pay for street improvements, are constitutional. But it does not seem to have been considered necessary, in any of the decided cases, to look very carefully into the constitutional limitations that .are imposed on the exercise of this power, and hence these limitations have not been fully ascertained and announced •'in any of the decided cases.
This is the first case, in this court, in which the assessment was made on the principle of special benefits, without refer•ence to frontage. In addition to the interests which the plaintiff has at stake in the ease, the subject is of such general importance as to justify a recurrence to the nature of the right .and power of taxation — general as well as special — and the limitations that exist upon the exercise of the power; whether such limitations are imposed by the fundamental law of the state, by principles applicable to the nature of *559 the subject, or by the statute delegating the power of assessment to municipal corporations.
The right of taxation in the state may be said to be founded on necessity, for it is so essential to its existence that it can not be surrendered by it, or reclaimed by the people while it continues to exist. It is, therefore, said to inhere in the state as a part of itself. The same may bo ¡said of the power which is designed to enforce the right.
In the distribution of power, our constitution vests the taxing power in the legislative department. Inasmuch as •the right of taxation is based on necessity, the power must be commensurate with the right, and the state, through the the legislature, may legitimately exercise the power of general taxation, on the objects to which it is applicable, to an •extent limited ouly by the discretion of the general assembly, or by the restrictions expressly imposed on its exercise by the source of power — the people, or by restrictions implied from the nature of the subject.
In all forms of civilized government, experience has proved that there is no other power more liable to abuse than that of taxation, or that is more detrimental to ultimate public prosperity, or more destructive in its consequences to the private property, rights, and interests of the individual, than it is when abused.
In formiug the constitution of this state, the necessity for taxation is recognized on the one hand, and the dangers incident to the exercise of the power on the other; and to provide what was necessary for the one, and against the dangers of the other, article 12 of the present constitution was adopted.
It prohibits one form of odious taxation, and forbids the contracting of debts by the state for internal improvements, which might be so used -as to create a necessity for oppressive taxation.
It then provides that the state may raise revenue by taxation, “ sufficient to defray the expenses of the state for each year, and also a sum sufficient to pay the interest on the state debt,” all of which must be raised in pursuance *560 of laws distinctly stating the object for which the tax is levied. The second section furnishes the basis for the levy and the rule of apportionment. Its operative words are as follows: “ Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and also all real and personal property, according to its true value in money.”
By the provisions of this article, therefore, the purpose, the mode, and the extent to which this power can be legitimately exercised are all clearly expressed. The basis for the levy is the money value of the thing taxed, and the apportionment must be by an ascertained rate or per centum,, which causes the burden to rest uniformly and equally on all the property in the state. And, by judicial construction, this article is as applicable to counties, townships, and municipal corporations, as it is to the state, and furnishes the governing principle for all laws authorizing taxes to be levied for either purpose. Zanesville v. Richards, 5 Ohio St. 589.
After all the care that has been thus taken to restrict the powers of general taxation, and to cause the burdens created by it to rest uniformly and equally upon all, it would be-astonishing to find that dangers incident to the assessment mode of taxation, which are very great, had been entirely overlooked in framing and adopting the constitution, and that the powers of this mode of taxation are subject to no-limitations or restrictions except the discretion of the general assembly. If such a discretionary power is vested in the general assembly, it is very clear that it may be used to subvert section 19 of the bill of rights, and private property will not be inviolate, but at the mercy of a discretion under which it may be taken from the owner without compensation, and be gratuituously given to the public.
But the subject was not overlooked, and' I think it can be shown, (1.) That this mode of taxation is restricted by the legal principles applicable to it; (2.) that the constitution not only recognizes those restrictions, but requires additional restrictions to be imposed, if necessary, to prevent *561 the abuse of the power; and, in. addition, to these, (3.) that by legislative construction, these restrictions are recognized and enforced.
1. The right that gives to municipal corporations the privilege of resorting to this mode of taxation, is not, like the right of general taxation in the state, founded on necessity; on the contrary, the right of a municipal corporation to assess private property to pay for a local public improvement is not founded on necessity but on a principle of justice, by which the public may take from an individual whose lands, owing to their proximity to it, are specially benefited by the improvement, such a portion of the cost thereof, as is the equivalent, but not in excess, of the special benefits conferred by the improvement; and this principle of justice, in itself, impliedly furnishes the measure of, and limits the extent of the right.
To show that the assessment is confined to such property, and limited to the value of the special benefits conferred as' above indicated, see Scoville v. The City of Cleveland, 1 Ohio St. 126; Hill v. Higdon, 5 Ohio St. 243; Meissner v. Toledo, 31 Ohio St. 387; Tide Water Company v. Coster, 3 C. E. Green, 518; Hammett v. Philadelphia, 65 Penn. St. 146; Thomas v. Gaines, 35 Mich. 156; Nicols v. City of Bridgeport, 23 Conn. 204; Matter of Flatbush Avenue, 1 Barb. 286; Matter of Fourth Avenue, 4 Wend. 452; Matter of Albany Street, 11 Ib. 149; Matter of William and Anthony Street, 19 Ib. 678; Emmerson v. Saltmarshe, 7 Ad. & El. 266; Dore v. Gray, 2 T. R. 358; Stafford v. Hamston, 2 B. & B. 691, and the numerous cases therein referred to.
This mode of taxation is not a necessity to the state, for its treasury is not replenished by its exercise. It is not a necessity to municipal corporations, for they could, and many of them do, exist, and exercise all the functions necessary to their existence without its aid, by making and paying for their local public improvements by general taxation. Still, if a municipal corporation sees proper to avail *562 itself of the assessment mode of taxation to pay in whole or in part for local public improvements, and in making such, the property of individuals, owing to its proximity to the improvement, is specially benefited, it is but just that such property should pay toward the cost of the improvement a sum that is equal to the value of the- special benefits conferred, for to this extent it is peculiarly benefited over and above that of other individual members of the public. But when the property has paid the value of the special benefits so conferred, its owners stand in the same relation to any residue of the cost of the improvement remaining unpaid, that other members of the public do, and all must bear the burden of paying such residue by general taxation. If a sum is exacted in any instance,, in excess of the value of the special benefits conferred, it is, as to such excess, in that instance, private property unjustly taken for public use without compensation to the owner.
The power of assessment in a municipal corporation can only be commensurate with the right it is designed to enforce; and, although it is said to be a part of the taxing power of the state, is not an inherent, but a power that must be expressly delegated, and when this is done, it is subject to the restrictions imposed by the terms in which it is delegated, or by the principles applicable to the subject which is the object of it.
2. The word “ assessment ” is used but once in the constitution in connection with “ taxation,” and this is in section 6, of article 13. The section reads thus : “ The general assembly shall provide for the organization of cities and incorporated villages by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent the abuse of such power.”
The general assembly had already been invested with the legislative power of the state by the first section of the second article, which embraces the power to organize municipal corporations, and also to control all the subjects to which the section relates. I therefore regard the section *563 as essentially mandatory and restrictive. It is a mandate to the general assembly to do two things (1) to “ provide for the organization of cities and villages by general laws,” and (2) to “restrict their power of taxation, assessment,” etc., “ so as to prevent the abuse of such power.”
Now, as above shown (Zanesville v. Richards), by judicial construction, article 12 of the constitution, with all its express limitations, applies to the power of taxation by municipal corporations for general revenue, and unless a vain thing was intended, which can not be presumed, the mandate upon the general assembly to restrict their powers of taxation, so as to prevent the abuse of such power, must mean restrictions in addition to those contained in article twelve.
The word “ assessment,” as used in the section, is simply the recognition of a mode of taxation then and previously existing in municipal corporations in this state, and as a word importing power over private property can not be presumed to have been loosely used in the constitution, it follows that the word “ assessment ” must have been used .in a definite and understood sense, and when the mode of taxation which it represents is defined, and its limitations ascertained by judicial construction, the mandate requires the general assembly to imp ose further restrictions on the power of this mode of taxation, if necessary, to prevent the abuse of it.
The word “ assessment,” therefore, simply means a mode of taxation, which was well understood when the word was inserted in the section quoted.
In Hill v. Higdon, supra, in speaking of assessments, Chief Justice Ranney says: “ This power had, for many years, been in constant and active exercise in every part of the state, and was perfectly understood by every member of the convention. The popular as well as legal significar tion of this term had always indicated those special and local impositions upon the property in the immediate vicinity of an improved street, which were necessary to pay for the improvement, and laid with reference to the special benefits *564 which, such property derived, from the expenditure of the money.” He was there discussing the constitutionality of this mode of taxation, and not defining what it is as we are now; hut every word that is said is applicable here. The definition, which embraces the measure of the right, and the limits upon the power of this mode of taxation, above given, and supported by the authorities cited to it, must therefore be construed to be the correct one, and the one in which the word is used in section 6. And such assessments “ can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the properties assessed, and to the extent of those benefits.” Hammett v. Philadelphia, supra. As above said, the restrictions which the general assembly is required to impose on this mode of taxation must be restrictions in addition to those that will be implied from the term “ assessment.”
3. The legislative construction fully supports the above views. Section 539 of the municipal code, as amended in 1873 (70 Ohio L. 126), provides that the council “ shall have power to assess the cost and expense of such improvement upon the property benefited thereby, including lots and lands that are contiguous and adjacent, as well as those that abut on said street.” When construed with reference to the subject, the implication from this language is irresistible, that there can be no assessment where there has been no special benefit conferred, and it is to be implied with equal force, that as such benefits are made the basis of the assessment, it must be limited to the value of the special benefits conferred, and can not exceed them. That the benefits named must be special benefits is implied from the fact that the assessment must be confined to property that is contiguous and adjacent to, or abutting on the improvement. It is such property only that can be specially benefited, according to all the authorities.
By section 584, the assessing board is “ to report to council an estimated assessment of such cost on the lots or lands to be charged therewith, in proportion, as nearly as maybe, *565 to the benefits which may result from the improvement to the several lots and parcels of land so assessed.” When this is read in connection with section 539, we have the basis of the assessment, which is the value of the special benefits conferred, and in this section (584) the rule of apportionment by which'the burden is to be equalized among those who have to bear it. The whole amount of the assessment is to be apportioned amongst the several lots specially benefited, in the proportion that the special benefits to each lot bears to the whole special benefits conferred by the improvement.
These two sections provide exactly what this mode of taxation in its nature requires.
And the general assembly has not been unmindful of the mandate to impose additional restrictions to prevent the abuse of the power of assessment. By section 543, which is applicable here, the assessment is so limited that it can not exceed twenty-five per centum of the value of the property assessed at the time and in view of the appropriation.
Thus we find this mode of taxation, as defined by the courts, the word “ assessment,” as used in section 6, and the statute conferring the power of assessment upon the city, all in harmonious accord; and the spirit of article 12, as to basing the assessment on value, and apportioning it so that jt will rest uniformly and equally upon those who must bear it, is recognized as pervading this mode of taxation. To assessments thus made, no constitutional objections can be successfully urged.
Having settled the general principles applicable to this mode of taxation, in view of them, I will now notice some of the objections specially urged against the assessment in this ease.
It is urged that the assessment is not confined within the territorial limits designated by section 539.
In Meissner v. Toledo, supra, the record, as in this case, shows the location of the lots assessed, and the cases, on this point, are not distinguishable, except that in the case before us, the assessment is placed on a more limited terri *566 tory than in that; and we find no ground that would justify a departure, in this case, from what is decided in that, on this point.
3. It is claimed that the assessment is invalid and void, on the ground that it fails to show that it is based on the value of the special benefits conferred by the opening of the street, or that it is properly apportioned; and that these things are apparent on the face of the proceedings which are made part of the record.
It seems to us that this Objection is well taken. It is essentia] to the validity of the assessment that the proceedings by which it is made must show upon their face that the requirements of the law have been substantially complied with, and that the restrictions imposed by law upon the exercise of the power have been observed in such a way that the owner of the lot assessed has had the benefit of the protection they were intended to give. It is not my purpose to attempt to indicate the manner in which all this should be made to appear on the face of the record.
In this case, the city council resolved: “ That the board of improvements be and they are hereby requested to prepare an estimated assessment, as required by law, of the costs and expenses incurred in the extension of Bond street, and report the same to this council.”
The board is not required to estimate and assess the value of the special benefits conferred, which may or may not be equal to the cost of the improvement, but to prepare an estimated assessment of the costs and expenses incurred, as required by law. This order was certainly calculated to mislead the board.
Afterward, the board of improvements submitted an “ estimated assessment upon the property benefited, to pay the damages and costs incurred in opening and extending Bond street.”
This assessment is made part of the record, and is without caption or conclusion. It locates the lots assessed, and describes them by their number and otherwise, gives their frontage, the rate per front foot of the assessment, and the *567 amount assessed on each lot, and the aggregate amount assessed on all the lots. An equalizing board was appointed and required to equalize the assessment according to lato.
This board made a report to the council, which is made part of the record. It properly takes the same property reported by the assessing board, and arrives at the equalized amount imposed on each lot at a given rate per front foot.
There is nothing in all this to show that the special benefits conferred were valued at all, or, if valued, to shotv that the assessment was apportioned in proportion to the special benefits that each lot received.
The only thing to indicate that benefits were conferred at all, is found in the report of .the assessing board, that the assessment is “ upon property benefited.” But this, of itself, is of no effect. It lacks the essential elements of valuation and apportionment, above spoken of, without which the assessment may be arbitrary and oppressive. Presumption, if permitted in favor of the validity of any part of the proceedings, can not be permitted to' supply the essential elements of a valid assessment that are wanting here.
The assessment, equalization, and confirmation ought all to have been set aside and held for naught; and, for error in not so doing, the judgment of the district court is reversed, and the injunction made perpetual, without prejudice to the right of the city to make a new assessment.
Although unnecessary to the decision of the case, in view of the fact that a new assessment will probably be made, there are other questions presented on the record which we think it proper to notice.
4. The plaintiff introduced as a witness Adolph Guider, one of the equalizing board, and proposed to prove by him that “ the equalizing board did not make the assessment in proportion to the benefits derived from the opening of Bond street alone, but were actuated by other motives, and were controlled by the benefits that might result from the opening of a contemplated street from Bond street to Erie *568 street, for which the city of Cleveland appropriated land in April, 1874, but of which the city had not taken possession.” 'Which evidence was rejected. There was no error in this. If the opening of a new street rendered it practicable to open another desirable and needed street, which could not have been opened before, and which, if opened, would render the property adjacent to the new street more accessible and available for use and for market, and hence more desirable and valuable, the extent to which the opening of the new street contributed to creating the new condition of things, including the prospective opening of a contemplated street, as indicated by the proof offered, would be a proper subject for the consideration of the assessing and equalizing boards, in estimating the benefits conferred by the opening’ of the new street.
It was not the special benefits that might be conferred by the opening of the contemplated street that could be considered, but the fact that the opening of the new street rendered it practicable to open the contemplated street; and if this, in itself, specially benefited the adjacent property, which was a question of fact and not of law, then, to the extent of such benefit, the boards should have been controlled by it in estimating the special benefits conferred by. the opening of the new street.
5. It is claimed that the equalizing board equalized an assessment on the basis of $166,777.50, whereas the assessment that they were required to equalize was only $157,-749.89, by which over $9,000 more than was assessed was equalized.
This is a valid objection to this assessment as confirmed and placed on the duplicate.
Section 586 provides for the appointment of an equalizing board, and section 587 provides, that the board, after taking an oath “ honestly and impartially to discharge their duties, shall hear and determine all objections to the assessment, and equalize the same; which equalized assessment they shall report to the council.” These embrace all their duties, and it is apparent that they have no power to add *569 to or deduct from the assessment to he equalized, except that they may, ex necessitate, as a part of the costs of the proceeding, properly add to the assessment a reasonable compensation to themselves for making the equalization. In adding over $9,000 to the assessment, before equalizing it, the hoard of equalization acted wholly without authority, and their equalization was invalid and void, and, on this ground, the council ought to have set it aside.
If the assessment was insufficient, resort should have been had to an additional pro rata assessment by the council, under section 559.
6. It is claimed, in substance, that this assessment was levied to reimburse the general fund of the city, for moneys taken from that fund to pay the bonds of the city issued in anticipation of the collection of the assessment, and not for the purpose of paying the damages and expenses incurred in opening Bond street.
The assessment was made payable in several installments, as provided in section 577. The bonds were issued, and the faith of the city pledged for their payment, to enable it to pay for the lands appropriated, under section 663, as amended February 1, 1873. 70 Ohio L. 21.
The purpose of the council from the beginning, was that the costs of the appropriation should he paid by assessment, and there is nothing to indicate that it ever elected to pay the cost thereof from the general fund of the city. The bonds were issued in anticipation of the assessment, which the city is now seeking to collect. Owing to delays in making and collecting the assessment, the city, in the meantime, has been compelled to pay some of the bonds, while the assessments are not all collected yet.
Under such circumstances, the city may lawfully collect proper assessments to pay for the land appropriated.
7. It is objected by the plaintiff that equalized assessment is void, on the ground that no notice was given of the time the board of equalization would proceed with the equalizing of the assessment, nor was any notice given of the filing of the same with the clerk or council.
*570 We do not think this objection well taken.
By the provisions of section 585, before adopting the assessment made by the assessing board, the council is required to publish notice for three consecutive weeks, that such assessment has been made, and that the same is on file in the office of the clerk, for the inspection and examination of any person interested therein.
We think that after the notice required has been given, all persons interested have a reasonable opportunity to be heard against the assessment, and that, from this point, the proceeding must be regarded as pending, and that all pex*sons interested are bound to take' xiotice of what is done up to the time the equalized assessment is confirmed.
8. Eor the purpose of applying the per centum limitations of section 543, the court confined the inquiry as to value to the time the city paid for axid took possession of the appropriated property, and rejected testimony offered by the plaintiff" as to the value of the property assessed, at the time the assessment was made, which was some two years subsequent to the time the city took possession of the property. To the rejection of such testimony the plaintiff" excepted.
The court did not err in this respect. There had probably been a shrinkage in the value of the property in question between the periods named, axid, as a consequence, it would have been more favorable to the plaintiff to have had the per centum limitations applied to the value of the property at the latter period named. But sxxppose there had been a great advance in the value of the property between the periods named. How woxxld the case have then stood? It would clearly have been unjust to the plaintiff" to have applied the limitations to the value of the propex’ty at the latter period.
In a street improvement case, the limitations of section 543 are to be applied to the value of the property after the improvement is made. But in an appropriation of land for opening a street, the appropriation is not an improvement, within the meaxiing of the section, and the limitations are *571 to be ascertained by tbe value of tbe benefited property at tbe time and in view of tbe appropriation.
9. A majority of the court think that where the city council determines that the amount of the assessment does not exceed the value of the benefits specially conferred, its judgment iu the premises, in the absence of fraud, is final and conclusive, unless modified by the council before the final confirmation, as provided in section 588 ; but when the municipal authorities, in levying special assessments, do not undertake to determine the amount of the special benefits conferred, either in respect to the amount assessed, or in the apportionment of the burden, the assessment may be enjoined, and in an action for that purpose parol evidence may be introduced to show that the authorities did not act on the proper basis. If this proposition means that the council may determine that the amount of the assessment does not exceed the value of the benefits specially conferred, without an actual valuation of the special benefits, and without notice to those who are to be assessed, I can not concur in it.
Judgment reversed, and the injunction made perpetual.